**Joan CODY, Plaintiff–Appellee,**

v.

**Keith MELLO and Thomas Murray, Defendants–Appellants.**

No. 1604, Docket 94–9210.

United States Court of Appeals, Second Circuit.

Argued April 14, 1995.

Decided June 26, 1995.

Carolyn K. Querijero, Asst. Atty. Gen., Hartford, CT (Richard Blumenthal, Atty. Gen. of Connecticut, Leslie D. McCallum, Asst. Atty. Gen., Hartford, CT, of counsel), for defendants-appellants.

John R. Williams, New Haven, CT, for plaintiff-appellee.

Before: FEINBERG, VAN GRAAFEILAND and KEARSE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Keith Mello and Thomas Murray appeal from a default judgment of the United States District Court for the District of Connecticut (Daly, J.) awarding Joan Cody $54,694.40. For the reasons that follow we vacate and remand.

On June 9, 1989, defendants, Connecticut police officers, searched Cody's apartment in Hamden, Connecticut pursuant to a valid warrant authorizing the search for and seizure of narcotics and related items. On September 20, 1991, Cody sued defendants in their individual capacities alleging that they "unnecessarily and unreasonably tore apart

substantial portions of the plaintiff's said apartment, and thereafter left leaving the apartment in great chaos and disarray," thereby violating her constitutional rights. She sought compensatory and punitive damages plus attorney's fees.

Service of the summons and complaint was not made upon defendants personally or by delivering copies to their usual places of abode, as required by Fed.R.Civ.P. 4(e) and Conn.Gen.Stat. § 52–54. Instead, copies were left at the police stations out of which the defendants worked. Apparently, the documents then were lost or misplaced, because neither the defendants nor the Connecticut Attorney General (who is representing them) received the copies, and defendants and their attorney remained unaware of the putative litigation until June or July of 1992.

Meanwhile, on May 14, 1992, plaintiff requested an entry of default because there had been no appearance by the defendants. The district court granted the request on June 4, 1992. A motion for default judgment was filed on June 10th and granted on July 13th. When the Attorney General's office learned of the entry of default, an Assistant Attorney General contacted plaintiff's counsel, and, according to the undisputed affidavit of the Assistant Attorney General, the two mutually agreed that the filing of an appearance and answer would be sufficient to get the case back on track and avoid a default judgment.

Instead of informing the court of this agreement, plaintiff's counsel filed an affidavit of damages in support of a default judgment, which was entered on August 24, 1992. If defense counsel correctly described his agreement with plaintiff's counsel (and the accuracy of defense counsel's description has not been challenged), the decision of plaintiff's counsel to file the affidavit of damages necessary for entry of a monetary award and his subsequent argument that defendants had waived the defense of lack of personal jurisdiction by filing an appearance and answer, may be described with some degree of accuracy as a form of mousetrapping. In any event, the defendants succeeded in having the judgment vacated.

Thereafter, the customary pretrial proceedings, with occasional hitches, took place and a "call of the calendar," as described in the district court's docket sheet, was scheduled to take place on January 4, 1994. However, because of inclement weather, the calendar call was cancelled.

Plaintiff's counsel subsequently was notified by the court clerk that the calendar call would take place on January 5th. However, defense counsel was not informed of this fact. Accordingly, on January 5th, no one representing the defendants was present. The following exchange then took place between plaintiff's counsel and the court:

THE CLERK: Cody versus Mello, 3:91CV559.

MR. PATTIS: Norm Pattis on behalf of the Plaintiff, Your Honor.

THE COURT: Is there anyone here from the Attorney General's Office, State Attorney General's Office?

(No response.)

THE COURT: Well, I'll hear the other one first and then I'll hear you as to any motion you may have.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: We'll recall the matter of Cody against Mello, 3:91CV559.

MR. PATTIS: Your Honor, I haven't been in touch with opposing counsel, but I assume they were notified as we were, so I'd like to move for a default for failure to appear.

Although the assumption of plaintiff's counsel was incorrect and unfounded, the district court, uninformed of this fact, granted the motion with the simple, unsupplemented statement "Motion is granted." The district court's order of default reads in pertinent part as follows:

*In view of the defendants' failure timely to appear at the Court's January 5, 1994 Call of the Calendar, and on the plaintiff's oral motion, the Clerk of the Court is hereby directed to enter default in favor of the plaintiff. Further, it is hereby OR-DERED that default judgment shall enter in favor of the plaintiff and against the defendants. . . .* [emphasis supplied]

A "Judgment," which was prepared and entered by the clerk on January 13, 1994 and addressed only the issue of liability, similarly expresses the basis for the default as follows:

> The defendants, having failed to timely appear at the Court's January 5, 1994 Call of the Calendar and plaintiff having orally moved for default and default judgment and the Court having Ordered that default judgment enter in favor of the plaintiff and against the defendants,
>
> It is hereby ORDERED that judgment shall enter in favor of the plaintiff.... [emphasis supplied]

Thereafter, plaintiff filed a document labeled "Affidavit of Damages" which reads in pertinent part as follows:

> 2. The defendants broke into my home on the early afternoon of June 9, 1989, and literally tore apart many areas of the residence. Property was thrown and scattered around everywhere in a way that was totally unnecessary and very deeply upsetting to me. There cannot have been any legitimate reason for causing so much chaos and damage to me.
>
> 3. As a result of this action of the defendants, I was very upset for a long time. I suffered a great deal of anxiety and felt invaded, degraded and humiliated.[1]

The only invoice for repairs in the record is in the amount of $90.14 and appears to represent the cost of repairing plaintiff's front door, which was forced open by the narcotics agents when they raided the premises.

Following the filing of the foregoing documents, a "Final Judgment" in the amount of $54,694.40 was entered. It is from this judgment that the defendants have appealed.

## DISCUSSION

This Court has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default. *See, e.g., Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993); *Traguth v. Zuck,* 710 F.2d 90, 94 (2d Cir.1983); *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981). We have recognized that " 'dismissal is "a harsh remedy to be utilized only in extreme situations." ' " *Colon v. Mack,* 56 F.3d 5, 7 (2d Cir.1995) (quoting *Jackson v. City of New York,* 22 F.3d 71, 75 (2d Cir.1994) (quoting *Harding v. Federal Reserve Bank of New York,* 707 F.2d 46, 50 (2d Cir.1983) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972)))). Similarly, we have described default judgments as " 'the most severe sanction which the court may apply.' " *Securities & Exchange Comm'n v. Management Dynamics, Inc.,* 515 F.2d 801, 814 (2d Cir.1975) (quoting *Trans World Airlines, Inc. v. Hughes,* 332 F.2d 602, 614 (2d Cir. 1964)). We have stated time and again that a trial court's desire to move its calendar should not overcome its duty to do justice. *See Outley v. City of New York,* 837 F.2d 587, 589 (2d Cir.1988); *Merker v. Rice,* 649 F.2d 171, 174 (2d Cir.1981); *Beary v. City of Rye,* 601 F.2d 62, 63, 65–66 (2d Cir.1979); *Peterson v. Term Taxi, Inc.,* 429 F.2d 888, 891–92 (2d Cir.1970). *See also Kotlicky v. United States Fidelity & Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987) (citing with approval *Denman v. Shubow,* 413 F.2d 258, 259 (1st Cir. 1969)).

A calendar call is "[a] court session given to calling the cases awaiting trial to determine the present status of each case and commonly to assign a date for trial." *Black's Law Dictionary* 203 (6th ed. 1990). Plaintiff's counsel conceded at oral argument that the instant case was not the only one on the January 5th calendar. Despite the assumption of plaintiff's attorney that the court clerk had notified defense counsel of the postponed calendar call, it is undisputed that the clerk had not done so. The district court's decision, made without prior notice, to grant a default and to order a default judgment "[i]n view of the defendants' failure timely to appear" runs contrary to all the admonitions

---

1. At page 15 of appellee's brief, the above-quoted language in her Affidavit of Damages is paraphrased as follows:

    In fact, the plaintiff presented straightforward testimony in her affidavits of the psychological injury she suffered upon returning to her home to find it trashed by unknown burglars.

this Court has made in the above-cited cases. *See also* Fed.R.Civ.P. 55(b)(2), which provides that "[i]f the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."; *Davis v. Musler,* 713 F.2d 907, 913 (2d Cir.1983) and *Commercial Casualty Ins. Co. v. White Line Transfer & Storage Co.,* 114 F.2d 946, 947 (8th Cir.1940) (per curiam).

In *Davis,* this Court repeated the criteria that should be considered when passing upon a request for relief from a default judgment. They are whether the default was willful, the level of prejudice that may occur to the non-defaulting party if relief is granted, and whether defendant has a meritorious defense. 713 F.2d at 915. Plaintiff's counsel does not and could not contend that defense counsel willfully failed to attend the delayed calendar call on January 5th. The district court apparently was misled by the assumption of plaintiff's counsel that defense counsel had been notified by the clerk of the adjourned calendar call date. Had the court directed that the accuracy of this assumption be checked, it would have learned that defense counsel's failure to appear was caused by his (arguably negligent) lack of knowledge that the calendar call would be held on January 5th.

Defense counsel moved promptly to set aside the default, and there is no evidence that plaintiff would have been prejudiced had this motion been granted. Indeed, plaintiff makes no claim of such prejudice. "[D]elay alone is not a sufficient basis for establishing prejudice." *Davis, supra,* 713 F.2d at 916.

Finally, it is well recognized that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States,* 441 U.S. 238, 258, 99 S.Ct. 1682, 1693–94, 60 L.Ed.2d 177 (1979); *Tarpley v. Greene,* 684 F.2d 1, 9 (D.C.Cir.1982). Indeed, Congress has made specific provisions for the use of force in certain instances to gain entrance into locked premises or interior rooms. *See* 18 U.S.C. § 3109; *Simons v. Montgomery*

*County Police Officers,* 762 F.2d 30, 33 (4th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). It has been said of section 3109 that it "does not prohibit action, it specifically permits violence." *White v. United States,* 346 F.2d 800, 803 (D.C.Cir.1965), *cert. denied,* 382 U.S. 1014, 86 S.Ct. 625, 15 L.Ed.2d 529 (1966). *See Payne v. United States,* 508 F.2d 1391, 1394 (5th Cir.), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975). Before any due process liability can be imposed for property damage occurring in a lawful search, it must be established that the police acted unreasonably or maliciously in bringing about the damage. *See Stone v. Agnos,* 960 F.2d 893, 895–96 (9th Cir.1992); *Bergquist v. County of Cochise,* 806 F.2d 1364, 1369 (9th Cir.1986). Mere negligence is not enough. *Daniels v. Williams,* 474 U.S. 327, 333–34, 106 S.Ct. 662, 666–67, 88 L.Ed.2d 662 (1986).

There is thus a substantial question whether the defendants, members of a task force assigned the duty of searching plaintiff's apartment for evidence of narcotics violations, acted unreasonably or maliciously in the performance of their duty. There also is a substantial question whether defendants can establish the defense of qualified immunity which they have pleaded in their answer. *See Wachtler v. County of Herkimer,* 35 F.3d 77, 81–82 (2d Cir.1994). Simple justice requires that they be given the opportunity to defend themselves.

The district court gave no reason for granting the default other than the failure of defense counsel to attend the January 5th calendar call, a failure which in the instant case did not justify the abrupt dismissal of their defense. *See Enron Oil Corp., supra,* 10 F.3d at 96. It is possible the district court was upset because of the deja vu aspects of the default. However, if this is so, the district court erred in placing the blame for the first default upon defense counsel. It was plaintiff's counsel who arranged for the defective service of the complaint and who reneged on his agreement to get the lawsuit "back on the track" if the defendants would cure the lack of jurisdiction by filing a notice of appearance. Admittedly, the handling of

this case by the Attorney General's office has been somewhat less than perfect. However, nothing that office has done or failed to do warrants the summary entry of the $54,694.40 judgment against the defendants. *See, e.g., Harding, supra,* 707 F.2d at 50. As stated in *Meehan, supra,* 652 F.2d at 277, "the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort."

The judgment is vacated and the matter is remanded to the district court for further proceedings.