Clara G. de **HERBSTEIN**, Plaintiff,

v.

**DABBAH SECURITIES CORP.,** Steve Dabbah, Peter Del Rio and Alex Dorian, Defendants.

No. 95 Civ. 0091 (SS).

United States District Court, S.D. New York.

Sept. 20, 1996.

---

S. David Harrison, Lesser & Harrison, New York City, for Clara G. de Herbstein.

Donald Rosenthal, New York City, for Dabbah Securities Corporation.

Glenn H. Shore, New York City, for Alex Dorian.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

In this action, plaintiff alleges, *inter alia*, that defendants Dabbah Securities Corporation, Steven Dabbah, and Peter Del Rio (hereinafter collectively "the Dabbah defendants"), conspiring with co-defendant Alex Dorian, an investment adviser, churned her commodities account, thereby violating Section 4b of the Commodity Exchange Act, as amended, 7 U.S.C. § 6b. Dabbah Securities Corporation ("Dabbah") counterclaims seeking, *inter alia*, recovery of a debit balance in plaintiff's commodity trading account.

Dabbah Securities Corporation ("Dabbah") now moves,[1] pursuant to Fed.R.Civ.P. 37, to dismiss plaintiff's Second Amended Complaint on the ground that plaintiff has wilfully refused to comply with discovery orders. The Dabbah defendants also collectively move for summary judgment, pursuant to Fed.R.Civ.P. 56, on Dabbah's counterclaims that relate to plaintiff's breach of her debit balance payment obligations.[2] For the reasons to be discussed, I grant the defendants' motions.[3]

## BACKGROUND

In or about June 1994, plaintiff, a citizen of Argentina, residing in Argentina and Uruguay, applied to open a commodities account with the clearing firm, Refco, Inc. ("Refco"). To open the account, plaintiff executed various documents, including a Customer Agreement, a Third Party Advisor Agreement, a Risk Disclosure Statement, and an Options Disclosure Statement. Under those agreements and statements, plaintiff authorized co-defendant Alex Dorian to make all investment decisions of her behalf; she represent-

---

1. By Stipulation and Order entered on November 22, 1995, plaintiff dismissed her action against defendants Steve Dabbah and Peter Del Rio. Nevertheless, these individuals remained in the action as counterclaim-plaintiffs.

2. Defendants have indicated that they will dismiss their remaining counterclaims if the court grants their motion for summary judgment.

3. Defendant Dorian has not joined the Dabbah defendants' motion, and it is not clear to the court what plaintiff intends to do with her complaint against Dorian. Within two weeks of this Opinion and Order, plaintiff is to advise the court of her intentions with respect to defendant Dorian.

ed that she was aware of the risks associated with trading in commodities futures contracts and that she had sufficient knowledge and experience to evaluate those risks and the means to bear the risks; she expressly committed herself to pay any debit balances in her account; and she obligated herself to pay Refco's costs, including reasonable attorneys fees, incurred in collecting any amounts due from her or in enforcing her obligations under the agreements. Debit balances accrued on plaintiff's account, which defendant Dabbah Securities Corporation paid. Plaintiff has refused to reimburse Dabbah, Refco's assignee and subrogee.

On January 6, 1995, plaintiff commenced this action seeking reimbursement for the money she lost in her commodities account. The Dabbah defendants counterclaimed, seeking, *inter alia*, reimbursement from plaintiff for the debit balances in the amount of $49,849.50, which Dabbah paid to Refco, the clearing broker. Dabbah also seeks interest on the debit balance, plus the costs, including reasonable attorneys fees, of collecting the debit balances from plaintiff.

On or about September 27, 1995, the Dabbah defendants served plaintiff with a notice of deposition and a request for the production of documents pursuant to Fed.R.Civ.P. 30 (hereinafter "Defendants' Document Request" or the "Document Request"). Plaintiff refused to submit to an oral deposition, claiming through her counsel that she was too frail to travel to New York to attend a deposition. Plaintiff also failed to respond to the Defendants' Document Request. Plaintiff's counsel proposed instead that defendants depose plaintiff's son, who allegedly had personal knowledge of the allegations of the complaint because he was the party who dealt directly with Alex Dorian and the account.

Defendants deposed the son, but also applied to the Court, by letter motion, for an order directing plaintiff to submit to a deposition. The Court, by Memorandum Order dated September 25, 1995, directed the plaintiff to submit to a deposition in New York, or show cause at a November 17, 1995 conference why her claims should not be dismissed for her failure to submit to a deposition.

Plaintiff did not submit to a deposition. By letter dated November 10, 1995, and at conferences held before the Court on November 17 and 30, 1995, plaintiff's attorney explained that plaintiff was too ill to travel to New York and that he believed her testimony was not necessary to the action because her son was the witness with the most knowledge of the commodities account at issue. After reviewing the parties' submissions and hearing argument on the motion, I disagreed with plaintiff and her counsel. Given the allegations of churning, plaintiff's knowledge and experience with commodities trading are central issues in the litigation, as are her knowledge and intent when she signed the various agreements with Refco. I explained to plaintiff's counsel that the son's representations of his mother's knowledge, experience, and intent had probative value, but it did not foreclose or render less meaningful defendants' need to depose plaintiff or receive documents responsive to their Document Request.

In order to accommodate the plaintiff's alleged illness, however, I issued the following order:

> Whereas, this Court has determined that Plaintiff has failed to comply with her obligations to respond to the [defendants'] demand for the production of documents or to produce responsive documents ... and has failed to submit to a deposition upon oral examination in New York City ...

IT IS THEREFORE ORDERED, that:

1. Plaintiff serve a formal response to the [defendants'] Rule 34 document demand ... no later than ... December 1, 1995, and shall promptly produce any responsive documents in her possession, custody or control.

2. Plaintiff shall submit to a deposition, to be held in Buenos Aires, Argentina ... prior to January 19, 1996.

3. Plaintiff shall (i) bear the reasonable travel expenses incurred by one attorney representing the [defendants] ... and (ii) compensate said attorney, at his normal billing rate, for his travel time to and from Buenos Aires. . . .

By letter dated December 8, 1995, plaintiff's counsel advised the Court, however, that "plaintiff does not wish to bear the expenses of a deposition in Argentina or other discovery procedures." (Exhibit F to Defendants' Notice of Motion). Plaintiff's counsel proposed a stipulation to dismiss plaintiff's claims with prejudice and grant defendants a default judgment on their first counterclaim for payment. Plaintiff's counsel further requested a conference with the Court, asking for assistance in resolving the matter expeditiously and without resort to motion practice. Settlement talks ensued between counsel, under supervision of the Court, during three separate conferences over the course of three months, but defendants ultimately rejected plaintiff's proposal to have a default judgment entered against her because they determined that a default judgment might be impossible to enforce in Argentina. At a conference, requested by defendants and held on May 17, 1996, the Court authorized the filing of the instant motion.

Plaintiff now opposes the motion to dismiss her complaint, claiming again that a dismissal of her action is not warranted because her deposition is unnecessary. Plaintiff also asserts that the entry of summary judgment against her should be precluded because defendants have admitted her allegations by failing to respond to a Request to Admit submitted by her to them on November 15, 1995.

### DISCUSSION

■ I agree with defendants that plaintiff, by her conduct, is estopped from relying on her Request to Admit in defending against the instant motions. The Court held three conferences with the parties before the instant motion was filed. At none of those conferences did plaintiff's counsel mention defendants' failure to respond to the Requests to Admit. The reason for this failure is self-evident. In counsel's December 8, 1995 letter, which predated the due date for defendants' responses to the Request to Admit, plaintiff's counsel made it explicitly clear that his client was not authorizing counsel to incur any expenses for either "a deposition in

Argentina or *other discovery procedures.*" (emphasis added). (Exhibit F to Defendants' Notice of Motion).

Counsel's December 8 letter, advising the Court that plaintiff would not proceed with discovery and was prepared to dismiss her action and default on defendants' first counterclaim, was a clear and unequivocal statement that plaintiff considered discovery terminated in the action. Certainly the Court treated the letter as such because the Court held multiple conferences with the parties in an attempt to settle the action without resort to motions. Moreover, it was obvious that plaintiff's counsel knew the import of the plaintiff's course of action because he anticipated in his December 8 letter that plaintiff's refusal to proceed with discovery would prompt defendants to move for summary judgment.

It is in bad faith and wilfully manipulative for plaintiff to argue now that defendants either intentionally or deliberately failed to respond to her Request to Admit or that they should be deemed to have admitted her allegations. In any event, the 3(g) statement filed by the Dabbah defendants constitutes an adequate denial of any Request to Admit made by plaintiff.

■ Plaintiff does not dispute the Court's authority under Fed.R.Civ.P. 37(b) to dismiss her action for her failure to comply with the Court's discovery orders. *See also National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (a court has broad discretion to impose sanctions for wilful failures to comply with its orders). There is also no dispute, based on plaintiff's counsel letter of December 8, that plaintiff has deliberately and intentionally chosen not to comply with the Court's two discovery orders. Finally, there is no dispute, based on the December 8 letter, that plaintiff realized that her case would be dismissed if she failed to comply with the Court's orders.

■ I recognize that dismissal is a harsh sanction, to be invoked only as a last resort and only after lesser sanctions are fully considered. *Dodson v. Runyon,* 86 F.3d 37, 39 (2d Cir.1996) ("[D]ismissal is a harsh remedy,

not to be utilized without a careful weighing of its appropriateness.") (footnote omitted); *Simmons v. Abruzzo,* 49 F.3d 83, 88 (2d Cir.1995) (dismissal of an action is appropriate only "in extreme situations" when "the court finds wilfulness, bad faith, or fault."); *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995) (citations omitted) (the Second Circuit "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits" and not by dismissal of complaints); *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 665 (2d Cir.1980) ("The remedy [of dismissal] is pungent, rarely used, and conclusive. A district judge should employ it only when [she] is sure of the impotence of lesser sanctions.") (footnote omitted).

In considering the harshness of the sanction of dismissal, I am not unsympathetic to plaintiff's concerns about the costs of discovery. Nevertheless, plaintiff does not claim, nor does her conduct indicate, that the cost of discovery would constitute a hardship upon her. In fact, plaintiff opened her commodities account with a $50,000 deposit, and, in her account application, stated that she had $100,000 in available risk capital and that her annual income exceeded $100,000. (Exhibit 1 to Plaintiff's Memorandum In Opposition To Summary Judgment on Defendants' Counterclaims).

Further, the Court disagrees with plaintiff's assessment that her testimony is unnecessary or unimportant in this action. It is the rare case in which a plaintiff's deposition and documents are unimportant or unnecessary. A party who brings an action presumptively obligates herself to sit for a deposition. In this case, which involves an allegation of churning and in which plaintiff signed papers containing representations about her knowledge and experience with commodities accounts, it is even more important that the defendants be given the opportunity to question plaintiff directly. Plaintiff's son is not a substitute for his mother; his representations about his mother and her experience and knowledge contain large components of hearsay. Defendants have a right to depose the party with direct knowledge; they also have a right to receive documents pertaining to the case, particularly when the documents sought are directly relevant to issues in the case. That includes the documents sought which relate to other investment accounts maintained by the plaintiff. Nothing about plaintiff's situation warrants abridging the defendants' rights to the highly material and highly probative evidence that defendants seek.

There is no lesser sanction the Court can impose in this action to protect its integrity or the defendants' rights because a lesser sanction simply would not compel plaintiff to honor her discovery obligations. Financial penalties are clearly impotent in that plaintiff is obviously aware that enforcement against her would be difficult, if not impossible, in Argentina and Uruguay. Plaintiff's proposal that I merely deny the defendants' motion to dismiss and let plaintiff present her case through her son is simply not adequate, given the plaintiff's wilful and intentional disregard of the Court's orders. Such a limited sanction would not affirm the integrity of the Court's processes and would affirmatively prejudice the defendants, because plaintiff's contemptuous actions would preclude them from developing their defense. Finally, plaintiff received ample notice that her wilful non-compliance with the Court's orders would result in dismissal. *See Abruzzo,* 49 F.3d at 83 (dismissal with prejudice is appropriate "only after (a) the court finds willfulness, bad faith, or fault on the part of the party refusing discovery, and (b) the court gives notice ... that violation of the court's order will result in a dismissal of the case with prejudice."). Therefore, I grant defendants' motion to dismiss plaintiff's complaint with prejudice.

■ In opposition to defendants' motion for summary judgment, plaintiff relied solely on the default admissions allegedly flowing from defendants' failure to respond to her Request to Admit. I have rejected this default as evidence. Plaintiff has not offered one scintilla of evidence to oppose defendants' motion. Her reliance on allegations contained in a memorandum of law is misplaced. That is not the type of competent evidence required by Fed.R.Civ.P. 56 to oppose a motion for summary judgment and to demonstrate that a material issue of fact

exists in the action. *See Randell v. United States,* 64 F.3d 101, 108–09 (2d Cir.1995) (a party opposing summary judgment must submit affidavits by individuals with personal knowledge or other competent evidence), *cert. denied,* —— U.S. ——, 117 S.Ct. 65, 136 L.Ed.2d 26 (1996). Because no material issue of fact has been put in dispute by plaintiff, I accept that defendants, through their affidavit submitted in support of their motion, have proven that plaintiff is contractually obligated in her agreements with Refco to pay the debit balances in her account and that she has failed to do so despite due demand. Moreover, under her agreements, plaintiff is obligated to pay defendants' reasonable attorneys fees in collecting on her obligation. Dabbah, as Refco's assignee and subrogee, is entitled to judgment against the plaintiff for her debt.

## CONCLUSION

■ For the foregoing reasons, the court grants Dabbah's motion to dismiss plaintiff's complaint with prejudice and grants summary judgment in Dabbah's favor on its first and second counterclaims in the amount of $49,849.50, plus interest at the legal rate of nine percent from July 29, 1994, when payment was due. I also grant judgment in favor of Dabbah on its third counterclaim for reasonable attorneys fees and costs in collecting on the unpaid balance. Because the third cause of action is based on a contract claim, judgment in this action cannot be entered until the attorneys fees and costs are determined. Defendants are directed to serve plaintiff's counsel, within two weeks of this order, with an accounting of their fees and costs, limited to the collection aspects of Dabbah's case. An apportionment should be made in the accounting between fees related to defending against plaintiff's complaint and Dabbah's prosecution of the counterclaims to collect plaintiff's unpaid balance.[4] Plaintiff's counsel will have two weeks after receipt of the accounting to oppose the accounting request, providing factual and legal support for any challenges to the accounting. Defen-

dants will have one week after receipt of the opposition papers to reply.

---

4. I disagree with defendants that plaintiff's complaint was frivolous. Accordingly, I reject defendants' request that I award them attorneys fees for defending against the action on the basis of the court's inherent powers.