Dana R. SPRINGS, N.Y. prisoner-and-parent # 99–A–5031 for himself, and on behalf of, Dean R. Springs (d/o/b 7–15–88), a Minor Child under the Age of Eighteen, Plaintiff,

v.

Peter CLEMENT, Acting Commissioner, and Craig Casey, Caseworker; Janes and Johns Doe, Employees; Nassau County Department of Social Services, State of New York; and Judge John B. Pessala, J.F.C. Nassau County Family Court, State of New York, individually and in their official capacities, Defendants.

No. CV 00–2909(ADS)(ARL).

United States District Court,
E.D. New York.

Sept. 25, 2001.

Dana R. Springs, Warwick, NY, Plaintiff Pro Se and on Behalf of Dean R. Springs, a Minor Child.

Friedman & Harfenist, by Charles Horn, of counsel, Lake Success, NY, for Peter Clement, Acting Commissioner; Craig Casey, Caseworker; Janes and Johns Doe, Employees; Nassau County Department of Social Services.

Eliot Spitzer, Attorney General of the State of New York, by Bonnie Garone, Assistant Attorney General, Mineola, NY, for Defendant Hon. John B. Pessala.

### *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

Dana R. Springs ("Springs" or the "plaintiff") commenced this action on his own behalf and on behalf of his minor son, Dean R. Springs ("Dean") by filing a complaint on May 22, 2000. In a form used by prisoners to file a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") Springs contends that Craig Casey, caseworker ("Casey"); Janes and Johns Does, employees; the Nassau County Department of Social Services ("Social Services"); and Judge John B. Pessala, J.F.C., Nassau County Family Court ("Pessala"), violated his civil rights as well as the civil rights of his son by: (1) intercepting letters he wrote to his son from prison; (2)

removing his son from "relative foster care" without giving him prior notice; (3) failing to respond to his letters; (4) denying his visitation petition without giving him notice of the proceedings that led to the denial; and (5) failing to consider his second visitation petition.

Presently before the Court are the following three motions: (1) a motion by Pessala to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."); (2) a motion by Peter Clement ("Clement"), Acting Commissioner, Casey, and Social Services ("Nassau County defendants") to vacate their default; and (3) a motion by Springs for summary judgment and sanctions.

## I. BACKGROUND

### A. The Complaint

The following facts are taken from the complaint. As of 1998, Springs' former wife, Laura Garcia Springs ("Garcia Springs") had sole custody of their child, Dean Springs. Early that year, Social Services charged her with neglect and Dean was removed from her custody and placed in "relative foster care," a phrase that Springs claims means that his son was placed in the home of a maternal aunt, Gayle Caferella ("Caferella").

When Springs learned of this placement, he filed a visitation petition in Nassau County Family Court in or about March 1998. The petition was served on Caferella and Social Services. According to Springs, Caferella did not want to appear in court and did not want to have any contact with him. Springs states that Caferella indicated that she would hand Dean over to Social Services if Springs forced her to abide by a visitation schedule.

Springs explains that in light of Caferella's feelings, Louis Garcia ("Garcia"), Dean's maternal grandfather, approached Springs with the following proposal: if Springs were to withdraw his visitation petition, Caferella would allow Garcia to have custody of Dean on most weekends, and Springs could visit his son at Garcia's home. Springs agreed to this proposal and withdrew the visitation petition. Springs states that Family Court and Social Services were aware of the visitation arrangement and the reason he withdrew the

petition. However, Springs alleges, Pessala subsequently dismissed the petition with inaccurate language.

Throughout the spring of 1998, Springs visited his son at Garcia's home almost every weekend. In the summer of that year, Springs and his son spent time together during the week as well. Springs explains that, among other things, they went to the movies, played at an indoor playground, and went bike riding and fishing together. According to Springs, Social Services was satisfied with the progress of the relationship between Springs and Dean.

When school resumed in the fall of 1998, Dean returned to the Caferella home during the week and stayed with Garcia on the weekends. Springs states that Garcia's schedule made it impossible for Dean to stay with Garcia on every weekend. Therefore, Springs and Dean did not see each other every weekend. On the weekends that they did not see each other, Springs states that he and Dean spoke on the telephone.

On December 15, 1998, Springs was arrested for what he describes as a "nonviolent crime." He was convicted and sentenced to a term of imprisonment of from two to four years. He has remained in custody since his arrest in December 1998.

From January through June 1999, Springs spoke to his son via the telephone twice a month. In the first week of July 1999, Springs received an "inter-facility letter" from Garcia Springs who had recently become a detainee in the women's section of the Nassau County Correctional Center. Springs alleges that Garcia Springs informed him that Dean was no longer living with Caferella, was now in the custody of Social Services, and was living in a boys' home called "St. Mary's." Springs states that he does not know whether Dean's placement in St. Mary's was voluntary or involuntary.

Springs claims that Social Services and Family Court violated his rights, as well as the rights of his son, by placing Dean in a group home without giving Springs notice of the proceedings that led to that placement. According to Springs, the law requires Social Services to demonstrate to Family Court

that they made every effort to locate the parents of the child whom they are seeking to place in a group home.

In July 1999, Springs filed a visitation petition against Social Services, which was rejected by the Family Court on September 2, 1999. Springs contends that Social Services and Family Court violated his rights by failing to provide him with notice of the proceedings that occurred in regard to his petition. Upon receiving his rejection letter, Springs resubmitted his "form petition" on September 5, 1999. Family Court allegedly has failed to decide this second petition, and Springs claims that this alleged failure is another violation of his rights.

In the meantime, Springs was writing letters to Dean at St. Mary's. However, he never received a response from his son. In late September 1999, defendant Casey visited Springs in jail. Casey asked Springs to stop writing letters directly to Dean and to write them to Casey instead. Springs claims that the directive from Casey and Casey's interception of his letters to Dean violated his right to communicate freely with his son. Springs also alleges that Casey intercepted Springs' earlier letters to Dean.

In October 1999, Springs wrote Casey requesting information that he does not specify in the complaint. After waiting for three weeks without a response from Casey, Springs wrote Casey another letter. He waited another three weeks but did not receive a reply from Casey. Springs wrote a third letter, which he also mailed to Casey. When he did not receive a reply to his third letter, Springs wrote a letter of complaint to defendant Clement, who is the Commissioner of Social Services. Clement responded in a letter stating that Dean was the person who decided to reject his father's letters. Clement assured Springs that the people helping Dean were continuing to discuss this decision with him.

In February 2000, Family Court assigned James Flood, Esq. ("Flood"), as legal guardian for Dean. Springs wrote Flood a letter expressing the same concerns he had expressed to Casey. Flood responded in writing, stating that he would speak to Dean's therapist about Dean's reluctance to read Springs' letters.

At an unspecified point in time, Springs' mother filed a visitation petition. She had several court appearances in connection with this petition. During the pendency of the petition, Springs wrote several letters to the presiding judge but received no response. Although the complaint is unclear, it appears that defendant Pessala was the judge who heard the visitation petition of Springs' mother, and thus, was the recipient of Springs' letters. Springs claims that Pessala deprived him and Dean of their civil rights.

In addition, Springs asserts that Casey violated Dean's civil rights by arranging for Dean's paternal grandmother to have visitation rights during a time that she works. Springs also alleges that the defendants are depriving Dean of his liberty interest, because he is being treated as a prisoner without having been convicted of a crime, in that he is isolated from his father, Garcia, and his paternal grandmother.

Springs requests the following relief in his complaint: (1) that he be assigned counsel; (2) that this Court obtain certain Nassau County Family Court files for an *in camera* review of their contents; (3) that the Court make findings of fact and conclusions of law; (4) that the Court appoint a federal monitor to oversee Social Services; (5) damages in the amount of $100,000 to be paid to Springs; and (6) damages in the amount of $2,000,000 to be paid to Dean.

### B. The Motions Presently Before the Court

Springs alleged the foregoing in a complaint filed in this Court on May 22, 2000. On May 23, 2000, the Court issued an order permitting Springs to proceed *in forma pauperis* and directing in the Clerk's Office to forward to the U.S. Marshals Service copies of the summons and complaint for service upon the defendants. The returns of service filed in this Court show that (1) Clement was served on August 17, 2000; (2) Casey was served on August 17, 2000; (3) the Nassau County Attorney was served on August 17, 2000; and (4) Pessala was served on September 13, 2000.

### 1) Motion by Pessala to Dismiss Pursuant to Rule 12(b)(6)

On October 2, 2000, Pessala filed a motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6). Springs filed opposition papers and Pessala filed a reply. Then, Springs submitted what he titles, a "Temporary Counterclaim." This document is actually a sur reply to the motion to dismiss. Because the Court's individual rules do not permit the submission of a sur reply, the Court will not consider this document in deciding the motion to dismiss.

### 2) Motion by the Nassau County Defendants to Vacate Their Default

In papers filed on October 26, 2000, the Nassau County defendants moved to vacate their default. Those defendants filed an amended notice of motion to vacate their default on October 30, 2000. Springs filed opposition papers on or about December 6, 2000.

### 3) Motion by Springs for Summary Judgment and Sanctions

In papers filed on October 28, 2000, Springs moved for summary judgment and attorneys' fees. The Nassau County defendants opposed the motion in their motion to vacate their default.

## II. DISCUSSION

In addressing the defendants' motions and opposition papers, the Court is mindful that the plaintiff is proceeding *pro se* and that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *see also Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of his or her lack of legal training. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). Indeed, District Courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999)

(quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Traguth*, 710 F.2d at 95 (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

### A. Motion by Pessala to Dismiss the Complaint

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *See King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999).

It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Butz v. Economou*, 438 U.S. 478, 511–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Maestri v. Jutkofsky*, 860 F.2d 50, 52–53 (2d Cir.1988); *Vasile v. Dean Witter Reynolds, Inc.*, 20 F.Supp.2d 465 (E.D.N.Y.1998). Judicial immunity is necessary because "principled and fearless decision-making" will be compromised if a judge "fear[s] that unsatisfied litigants may hound him with litigation

charging malice or corruption." *Vasile,* 20 F.Supp.2d at 489 (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

■ Absolute judicial immunity applies to all judges and other persons engaged in a judicial function, which is defined as the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *See Burns v. Reed,* 500 U.S. 478, 498–502, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The doctrine affords absolute immunity from damage suits for the judicial acts, unless such acts are done in the clear absence of all jurisdiction. *See Mireles,* 502 U.S. at 12, 112 S.Ct. at 288. The Supreme Court has emphasized that jurisdiction over the subject matter is the key element conferring immunity in a particular circumstance. *See Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson,* 386 U.S. at 554, 87 S.Ct. at 1217–18.

■ The scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. *See Stump,* 435 U.S. at 356–57, 98 S.Ct. at 1099. "A judge will not be deprived of immunity because the action he took was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.*

■ Further, a judge is only immune for actions performed in his judicial capacity. *See id.* at 360–63, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331; *Maestri,* 860 F.2d at 53. Courts use the "functional" approach in deciding whether an act is judicial for purposes of immunity. *Cleavinger v. Saxner,* 474 U.S. 193, 201–02, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). The issue of "immunity analysis rests on the status of the defendant. Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." *Id.* In deciding whether absolute judicial immunity applies, a court should consider the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity.

*Stump,* 435 U.S. at 362, 98 S.Ct. 1099, 55 L.Ed.2d 331. Other relevant factors include: (i) the adversary nature of the process; (ii) the correctability of error on appeal; (iii) the importance of precedent; and (iv) the presence of safeguards that reduce the need for private damage actions as a means of controlling unconstitutional conduct. *See Cleavinger,* 474 U.S. at 202, 106 S.Ct. 496, 88 L.Ed.2d 507.

■ Here, all of Springs claims against Pessala are barred because they stem from judicial decisions made while Pessala was presiding over the various visitation petitions brought regarding the custody of Dean. Although the complaint is difficult to understand, it appears that the only complaints Springs has regarding Pessala are that Pessala used inaccurate language when dismissing Springs' first visitation petition; failed to provide Springs with notice of the proceedings that resulted in the denial of the plaintiff's September 2, 1999 visitation petition; neglected to decide the plaintiff's third visitation petition, dated September 5, 1999; and failed to respond to Springs' letters regarding his mother's visitation petition. All of the conduct about which Springs complains was part of the process by which the Family Court rendered its decisions regarding Dean's custody. Because Pessala was engaged in the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights," *see Burns,* 500 U.S. at 498–502, 111 S.Ct. 1934, 114 L.Ed.2d 547, he is immune from suit for these actions.

In regard to the second exception to the doctrine of absolute judicial immunity, "[t]here is no evidence proffered, nor plausible claim suggesting, that [Pessala] was without jurisdiction to decide the matters or that they acted outside their judicial capacity." *Vasile,* 20 F.Supp.2d at 489. As such, the Court finds that Pessala is absolutely immune from suit.

Because Pessala is absolutely immune from suit, the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *See King,* 189 F.3d at 286. Therefore, Pessala's motion to dismiss the complaint in regard to the claims against

him is granted, and those claims are dismissed. The Court declines to grant the plaintiff leave to amend, because given that Pessala is absolutely immune from suit, any such amendment in regard to the claims against Pessala would be futile. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir.1995).

### B. Motion by Nassau County Defendants to Vacate Default

Fed.R.Civ.P. 55(c) provides that "[f]or good cause shown the court may set aside an entry of default." Relief from default is to be granted at the discretion of the court upon consideration of the individual circumstances of the case and the credibility and good faith of the parties. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). In determining a motion to vacate a default, the court focuses on three considerations with regard to the meaning of "good cause." These factors are: (1) the wilfulness of the default; (2) the potential prejudice to the adversary; and (3) the presentation of a meritorious defense. *See In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir.1996) (citing *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138 (2d Cir.1987)); *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir.1996); *Enron Oil*, 10 F.3d at 96. Other equitable factors that may be considered include whether the failure to follow a rule of procedure was a mistake made in good faith, and whether the entry of default would bring about an unfair result. *See Enron Oil*, 10 F.3d at 96.

The Second Circuit strongly prefers dispute determination on the merits and directs district courts to resolve any doubts regarding vacatur of a default in favor of a trial on the merits. *See Shah v. New York State Dep't of Civil Service*, 168 F.3d 610, 613 (2d Cir.1999); *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir.1995); *Enron Oil*, 10 F.3d at 95. Indeed, that Court has recognized that "dismissal is a harsh remedy to be utilized only in extreme situations." *Cody*, 59 F.3d at 15 (internal quotations omitted). The Court resolves doubts in the movant's favor so that the case may be resolved, if possible, on the merits. *See Enron Oil*, 10 F.3d at 95–96.

It is within this framework that the Court examines the motion by the Nassau County defendants to vacate their default. The Nassau County defendants claim that they did not respond to the complaint because of a miscommunication within the Nassau County Attorney's Office. They state that the summons and complaint for each of the Nassau County defendants were served on Social Services. The General Counsel of Social Services referred the summons and complaint to the Litigation Bureau in the Nassau County Attorney's Office. The Litigation Bureau sent the summons and complaint to the Family Court Bureau with the intention that the Family Court Bureau would be responsible for defending the lawsuit. However, the summons and complaint were delivered to an administrative worker, and believing that the Litigation Bureau had referred the summons and complaint to the Family Court Bureau for informational purposes, the case was never referred to an attorney.

It appears that the Litigation Bureau believed that the Family Court Bureau was handling the matter, because of the nature of the underlying facts. Meanwhile, the Family Court Bureau believed that the Litigation Bureau was handling the case, because it handles all federal court litigation. Thus, the Nassau County Attorney's Office did not file a timely response to the summons and complaint, and did not realize that they had failed to do so until October 2000. All of these allegations, taken together with the fact that the Court must resolve all doubts in favor of a trial on the merits, *see Enron Oil*, 10 F.3d at 95–96; *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir.1986), leads the Court to find that the default of the Nassau County defendants was not willful.

The Court finds that vacating the default will not prejudice the plaintiff. Although granting the Nassau County defendants' motion to vacate the default will cause the plaintiff some delay, delay alone is insufficient to establish prejudice. *See Enron*, 10 F.3d at 98; *Davis*, 713 F.2d at 916. Rather, the plaintiff must show that a delay would "result in the loss of evidence, create increased difficulties of discovery, or provide

greater opportunity for fraud and collusion." *Davis*, 713 F.2d at 916. Springs does not allege that evidence has been lost or that difficulties in discovery have been created as a result of the delay. Rather, he claims that the delay will "consum[e] time, effort and resources," which is insufficient to establish a claim of prejudice. Springs does assert that the delay created by vacating the default will further bring harm to his son. Although this is a serious consideration, Springs does not offer specific support for his proposition. The assertion of prejudice is simply too generalized to justify denying the motion to vacate the default. *See Shah*, 168 F.3d at 613 (stating preference for adjudication on the merits); *Cody*, 59 F.3d at 15 (same); *Enron Oil*, 10 F.3d at 95 (same).

■ Finally, the Court finds that the Nassau County defendants have set forth assertions of a meritorious defense that are sufficient to warrant vacating the default judgment. To set aside a default, the movant must present some evidence demonstrating " 'that if relief is granted the outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand.' " *In re Martin–Trigona*, 763 F.2d 503, 505 n. 2 (2d Cir.1985). A defendant seeking to vacate a default is not required to establish conclusively the validity of the defense. *See Davis*, 713 F.2d at 915. Rather, the defendant must set forth some evidence beyond conclusory denials that raises a serious question as to the validity of the plaintiff's claims. *See Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993) (citing *Davis*, 713 F.2d at 916); *Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320–21 (2d Cir.1986).

■ Here, the Nassau County defendants claim that Springs lacks the standing to bring this action; that the complaint must be dismissed pursuant to Fed.R.Civ.P. 8(a); and there is no federal question against the Nassau County defendants for this Court to review. The Court is reminded that the Second Circuit strong favors resolution of a dispute on the merits, *see Shah*, 168 F.3d at 615, and accordingly finds that the assertions of the Nassau County defendants constitute a meritorious defense for the purposes of vacating the default judgment. Thus, the Court grants the motion by the Nassau County defendants to vacate their default.

## C. The Motion by Springs for Summary Judgment and Sanctions

■ In a largely incoherent motion, Springs requests that summary judgment be entered in his favor and that the Nassau County defendants be required to pay the U.S. Marshals Service the sum of $137.55 which sum allegedly represents the cost of serving those defendants. In regard to the plaintiff's motion for summary judgment, the Court notes that the parties never exchanged Rule 56.1 statements, nor did Springs submit one with his motion. Moreover, given that discovery has not even begun, it would be difficult for Springs to submit a Rule 56.1 statement. In light of the fact that Springs has failed to comply with the Fed.R.Civ.P. and the Court's Individual Rules regarding motions for summary judgment, as well as the fact that discovery has not yet been conducted, the Court denies Springs' motion for summary judgment with leave to renew at the completion of discovery.

■ Springs' request that the Nassau County defendants be required to pay the U.S. Marshals Service the amount it cost the Marshals Service to serve them is apparently a request that sanctions be imposed for the failure by the Nassau County defendants to respond to the complaint. Given that the Court has vacated the default of the Nassau County defendants and, in particular, has determined that their default was not willful, the Court declines to impose the sanctions requested by the plaintiff.

## III. *CONCLUSION*

Having reviewed the submissions of the parties, it is hereby

**ORDERED,** that the motion by defendant Pessala to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) is **GRANTED,** and the claims against defendant Pessala are dismissed; and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption of the complaint to read as follows:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DANA R. SPRINGS, N.Y. prisoner-and-parent # 99–A–5031 for himself, and on behalf of, DEAN R. SPRINGS (d/o/b 7–15–88), a Minor Child under the Age of Eighteen,

Plaintiff,

against

PETER CLEMENT, ACTING COMMISSIONER, and CRAIG CASEY, CASEWORKER; JANES AND JOHNS DOE, EMPLOYEES; and NASSAU COUNTY DEPARTMENT OF SOCIAL SERVICES, STATE OF NEW YORK; individually and in their official capacities,

Defendants.

and it is further

**ORDERED,** that the motion by defendants Clement, Casey, and Social Services to vacate their default is **GRANTED;** and it is further

**ORDERED,** that the motion by the plaintiff for summary judgment and the imposition of sanctions is **DENIED.**

**SO ORDERED.**