UNITED STATES of America, Plaintiff,

v.

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, et al., Defendants.

In the Matter of the Applications of Muzak, LLC, et al. and DMX Music, Inc., et al., Applicants,

For the Determination of Reasonable Licensing Fees.

No. CIV.A. 41–1395(WCC).

United States District Court, S.D. New York.

July 2, 2004.

White & Case LLP, New York, NY, Carol A. Witschel, Esq., I. Fred Koenigsberg, Esq., Stefan M. Mentzer, Esq., Of Counsel, American Society of Composers, Authors and Publishers, New York, NY, Richard H. Reimer, Esq., Of Counsel, for Defendant American Society of Composers, Authors and Publishers.

Weil, Gotshal & Manges LLP, Attorneys for Applicants Muzak, LLC and DMX Music, Inc., New York, NY, R. Bruce Rich, Esq., Michael A. Rona, Esq., Jennifer B. Gutterman, Esq., Of Counsel, United States Department of Justice, Attorneys for Plaintiff United States of America, Antitrust Division, Washington, D.C., Robert P. Faulkner, Esq., Of Counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

 Applicants Muzak, LLC and DMX Music, Inc. (collectively "applicants") move for clarification of this Court's Opinion and Order (the "Order"), dated March 17, 2004, in *United States v. Am. Soc. of Composers, Authors & Publishers (Applications of Muzak, LLC & DMX Music, Inc.)*, and published at 309 F.Supp.2d 566.[1]

1. ASCAP points out correctly that applicants' motion for clarification could be denied as a result of multiple procedural failures on their part. (ASCAP Mem. Opp. Mot. Clarification at 1 & n. 1.) First, we note with disapproval that this motion was filed without benefit of the pre-motion conference that has long been required by this Court's individual practices, an omission that could properly result in denial of their motion. *See, e.g., Springs v. Clement*, 202 F.R.D. 387, 395 (E.D.N.Y.2001).

Moreover, applicants' filing of this motion was untimely. Motions for clarification are governed by Local Civil Rule 6.3, which also governs motions for reargument, reconsideration and modification and states that notice of such a motion must be made within ten days of the "docketing of the court's determination of the original motion." Local Civil Rule 6.3; *see also, e.g., Small v. City of New York*, 304 F.Supp.2d 401, 403 (E.D.N.Y.2004); *DGM Investments, Inc. v. N.Y. Futures Exch.*, 288 F.Supp.2d 519, 521 (S.D.N.Y.2003). Unlike certain related motions, such as a motion for a new trial under Rule 59, the district court may extend the parties' time to file a Local Rule 6.3 motion. *Lichtenberg v. Besicorp Group, Inc.*, 204 F.3d 397, 403–04 (2d Cir. 2000).

In the Order, familiarity with which is presumed, this Court concluded:

> For all of the foregoing reasons, we conclude that a music publisher's catalog is not a "segment" for purposes of "per-segment" licensing under AFJ2 section VII and that ASCAP is, therefore, not required to issue to applicants a catalog-based license limited to those publishers' catalogs that are not otherwise directly licensed. *We also conclude, however, that the existence of such direct licensing relationships may and will be considered by this Court in a rate court proceeding under AFJ2 section IX in determining whether ASCAP has met its burden of proving the reasonableness of the blanket licensing fee it seeks or, in the event that ASCAP fails to meet that burden, in the Court's calculation of a reasonable fee based on all the evidence.*

309 F.Supp.2d at 581 (emphasis added). The parties disagree about whether the above-emphasized language in the Order requires a blanket license fee structure that is adjustable during the license term to afford applicants the benefit of direct licensing arrangements that they may enter into during the license term. (Applicants' Mem. Supp. Mot. Clarification at 1, 6.) Having reviewed the parties' submissions, we grant applicants' motion for clarification, but deny the specific relief requested therein. We conclude that under the Order, the Court need consider only those direct licensing relationships already in existence at the time of trial in determining a reasonable blanket licensing fee. Accordingly, the Order does not contemplate a blanket license fee mechanism that provides credits or discounts for direct licensing arrangements that applicants may enter into during the term of the license.

## DISCUSSION

■ Applicants contend that the Order and the Second Circuit's decision in *United States v. Broad. Music, Inc.*, 275 F.3d 168, 176–77 (2d Cir.2001) (hereinafter *"AEI"*), must be read as "requir[ing] the offer to applicants of a blanket license the fee mechanism of which affords applicants a credit or discount with respect to direct licenses whenever entered into during the license term." (Applicants' Mem. Supp. Mot. Clarification at 6.) They state that ASCAP's contrary construction would both render the Order meaningless and stop alternative licensing as contemplated by both *AEI* and the Order "dead in its tracks" because of the time needed to implement direct licensing programs in light of the "underbrush of decades of ossified

---

It is well established that "Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dietrich v. Bauer*, 198 F.R.D. 397, 399 (S.D.N.Y.2001). The motion may not be used as a substitute for an appeal from a final judgment, and a party also may not use it to " 'advance new facts, issues or arguments not previously presented to the Court.' " *Id.* (quoting *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md.*, 768 F.Supp. 115, 116 (S.D.N.Y. 1991)). In deciding a Local Civil Rule 6.3 motion, we may deny it and leave the original decision unaltered, vacate the original decision or grant the motion to consider the effect of an "overlooked matter" and then affirm or clarify the original decision. *Dietrich*, 198 F.R.D. at 399–400.

In the present case, we exercise our discretion to disregard applicants' failure to request a pre-motion conference, and we also extend the time for filing the motion for clarification. Declining to review the merits of applicants' motion would be a wasteful elevation of form over substance, especially in light of the extensive briefing that already has been undertaken on this particular motion by ASCAP, applicants and the United States. Moreover, we recognize the importance of a definitive order with respect to the parties' pretrial negotiations and preparation. Accordingly, we will consider the merits of applicants' motion for clarification.

blanket-license only practice [that] needs to be swept away." [2] (*Id.* at 2–3.) For its part, the United States endorses the open-ended approach advocated by applicants. (United States Mem. at 2.) We, however, disagree with applicants' suggested interpretation of the Order.

We begin with the plain language of the Order itself. We agree with ASCAP's observation (ASCAP Mem. Opp. Mot. Clarification at 2–3) that the relevant language in the Order states plainly that the Court will only consider presently existing, or put differently, "previously entered into" direct licensing relationships in the rate court proceeding.[3] *See* Order, 309 F.Supp.2d at 581 ("We also conclude, however, that the *existence of such direct licensing relationships* may and will be considered by this Court in a rate court proceeding under AFJ2 section IX in determining whether ASCAP has met its burden of proving the reasonableness of

the blanket licensing fee it seeks or, in the event that ASCAP fails to meet that burden, in the Court's calculation of a reasonable fee based on all the evidence." (emphasis added)); *see also id.* at 577–78 (describing *AEI* as "emphasiz[ing] that *Shenandoah* may not be utilized to preclude the issuance of blanket licenses with reasonable fees that reflect *direct licensing arrangements previously entered into* by applicants" (emphasis added)); *id.* at 578 (stating that "a rule permitting the blanket licensing fee to reflect *prior direct licensing arrangements* is in accord with previously articulated principles for the de termination of reasonable fees" (emphasis added)); *id.* at 580 ("We already have concluded herein, however, that the 'genuine choice' and 'per-segment' licensing provisions do not preclude the issuance of a blanket license with a fee structure that reflects applicants' *previous direct licensing arrangements.*" (emphasis added)).[4]

**2.** Applicants argue that not requiring a fee structure that provides for credits or discounts as a result of their ongoing entries into direct licensing relationships leads them into the "double payment trap," thus "nullify[ing] the intended benefits of this Order." (Applicants' Mem. Supp. Mot. Clarification at 2.) Noting the extensive and protracted negotiations with composers and publishers that they must undertake, applicants call "fanciful" the prospect of entering into all the direct licensing relationships that they desire by any fixed date, let alone the upcoming rate court fee trial. (*Id.* at 3.) Applicants also note that a "static blanket license fee" would not be "responsive to ... market reality." (*Id.*)

**3.** The United States disagrees with ASCAP's interpretation of the Order's language, and argues that the Order did not impose any limitation on when direct licensing arrangements may actually be considered. (United States Mem. at 2.) It argues that the "previous" and "prior" language of the Order "properly refer[s] to a fee that reflects direct licensing arrangements negotiated prior to the date when the payment obligation accrues under the license," which accords with applicants' requested fee structure as described in

the Order. (*Id.* at 2–3.) We disagree with the position of the United States because the Court's determination of a reasonable fee in a rate court proceeding cannot be subject to unpredictable future events. Moreover, the United States's quotation of the Order is inapposite here because the section to which they refer addresses applicants' request for a catalog-based per-segment license under section VII of the AFJ2, *see* Order, 309 F.Supp.2d at 571, a request that we denied in favor of requiring ASCAP to grant section IX blanket licenses with reasonable fees that reflect direct licensing arrangements previously entered into by applicants. *Id.* at 574, 578–79.

**4.** Moreover, the plain language of the Order accords with our reading of the Second Circuit's holding in *AEI* that "when an applicant may obtain alternative licensing under the BMI Decree, and the applicant requests a fee structure that reflects such alternative licensing, BMI must advise the applicant of the fee that it deems reasonable for the license." *AEI*, 275 F.3d at 177. In *AEI*, the Second Circuit seemed to contemplate a situation wherein the applicants sought to have the blanket license fee reflect direct licenses that they already had obtained from composers

We are not unmindful of applicants' concern, shared by the United States, that not requiring a fee structure that provides for credits or discounts as a result of their ongoing entries into direct licensing relationships will lead them into the "double payment trap" and "nullify the intended benefits of this Order." (Applicants' Mem. Supp. Mot. Clarification at 2; United States Mem. at 4–5.) We also recognize the practical difficulties involved in the direct licensing process and the fact that they render it highly unlikely that applicants will be able to enter into any significant number of direct licensing relationships before the trial of the present rate court proceeding. (Applicants' Reply Mem. Supp. Mot. Clarification at 4 & n. 4.) However, as ASCAP points out, the blanket licensing arrangement that it and applicants will ultimately enter into as a result of this proceeding need not be long-term. (ASCAP Mem. Opp. Mot. Clarification at 5.) Furthermore, unless the Second Circuit has occasion to decide otherwise,[5] the Order will remain in effect during the term of the license. Applicants thus will remain free to negotiate direct licensing arrangements with composers and publishers during that time, and may of course avoid the "double payment trap" by entering into such arrangements to take effect at a future date, a course of action that Muzak has in fact taken once before.[6] (Gertz Dep. at 17.) This simply means that the Order's long-term significance with respect to future licenses likely exceeds its immediate effect on the parties' business relationship, and that we need not adopt immediately applicants' proposed flexible fee structure, which we view as likely to spawn expensive and time-consuming litigation every time that applicants enter into a new direct licensing arrangement during the license term.

## CONCLUSION

We therefore grant applicants' motion for clarification, but deny the specific relief requested therein. We conclude that under the Order, the Court need consider only those direct licensing relationships already in existence at the time of trial in determining a reasonable blanket licensing fee. Accordingly, the Order does not contemplate a blanket license fee mechanism that provides credits or discounts for direct licensing arrangements that appli-

---

and publishers. *Id.* at 173 ("Applicants sought a rate determination for the blanket license subject to 'carve-outs,' i.e., 'a license that would enable a licensee to reduce its fee obligation to BMI to the extent it *had* licensed works represented by BMI directly with BMI's composer and music publisher affiliates.'" (emphasis added)).

We do note that the statement of facts in *AEI* does not indicate whether the applicants had in fact already entered into direct licensing arrangements. *See id.* at 171–74. More tellingly, however, the *AEI* opinion contains no mention at all of any adjustment, credit or discount structure for *future* direct licensing arrangements.

**5.** Indeed, we note that applicants observe that our ruling on this motion might cause one or

both of the parties to request that this Court revisit its March 31, 2004 denial of their request to enter final judgment pursuant to FED. R. CIV. P. 54(b), thus enabling appellate review of the Order. (Applicants Mem. Supp. Mot. Clarification at 4 & n. 5.)

**6.** Muzak entered into a direct licensing option contract with a music publisher in March 2002 (Witschel Aff., Ex. B), but in June 2002 elected not to exercise that option because of its concerns about overpaying for those rights in light of its existing blanket licenses with ASCAP and BMI whose fees would not be reduced to reflect the new direct licensing relationship. (Gertz Dep. at 16–18; Witschel Aff., Ex. C.)

cants may enter into during the term of the license.

SO ORDERED.