Glen ARENA, Plaintiff,

v.

DEPARTMENT OF SOCIAL SERVICES OF NASSAU COUNTY, Child Protective Services, Frances DeFilippis, Individually and in her Official Capacity as Assistant Director of Child Protective Services, Susan Wheeler, Individually and in her Official Capacity as Assistant Director Child Protective Services Nassau County Department of Social Services, Genna Currie, Individually and in her Capacity as a Case Worker for Nassau County Child Protective Services, Richard S. Lawrence, Individually and in his Official Capacity as Justice of the Family Court of Nassau County, Edward Emanuele and Leonard Sperber, Defendants.

No. 01CV6456 (ADS)(ARL).

United States District Court, E.D. New York.

Aug. 23, 2002.

Glen K. Arena, Bellmore, NY, Pro Se Plaintiff.

Nassau County Attorney's Office, by Deputy County Attorney Lark Teitler, Mineola, NY, Attorneys for the Defendants the Department of Social Services of Nassau County, the Child Protective Services, Frances DeFilippis, Susan Wheeler, and Genna Currie One West Street.

New York State Attorney General's Office, by Assistant Attorney General Ralph Pernick, Mineola, NY, Attorneys for the Defendant Justice Richard S. Lawrence.

L'Abbate, Balkan, Colavita & Contini, LLP, by Peter D. Rigelhaupt, Esq., Of Counsel, Garden City, NY, Attorneys for the Defendant Edward Emanuele, Esq. and Leonard Sperber, Esq.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is a civil rights case arising from a New York State Family Court proceeding involving the custody of a young boy.

The *pro se* plaintiff Glen Arena ("Arena" or the "plaintiff") alleges that the defendants the Department of Social Services of Nassau County (the "Department of Social Services"), the Child Protective Services, Frances DeFilippis ("DeFilippis"), Susan Wheeler ("Wheeler"), Genna Currie ("Currie") (collectively, the "County Defendants"), Judge Richard S. Lawrence of the Nassau County Family Court ("Judge Lawrence"), Edward Emanuele, Esq. ("Emanuele") and Leonard Sperber, Esq. ("Sperber") deprived him of the right to visit his son in violation of 42 U.S.C. § 1983. Presently before the Court are two motions to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, one by Judge Lawrence and another by Emanuele. Alternatively, Judge Lawrence and Emanuele move to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted under Rule 12(b)(6).

## I. BACKGROUND

The facts are taken from the complaint unless otherwise indicated. The plaintiff and Lisa Arena ("L.Arena") are the biological parents of Casey Arena ("Casey"). Casey is presently eight years old. On August 14, 1996, after being charged with, among other things, criminal contempt and harassment, the plaintiff pled guilty to criminal mischief in the fourth degree in the District Court of Nassau County. *People v. Arena*, 96–16085 (N.Y.Dist.Ct. Aug. 14, 1999). As part of his guilty plea, the Honorable Joseph H. Driscoll issued a three year order of protection directing the plaintiff to stay away from L. Arena and her family. *Id.* The order of protection did not interfere with the plaintiff's right to visit Casey pursuant to either a separation agreement or family court order. *Id.*

In the Summer of 1996, L. Arena filed a petition in the Family Court of the State of New York, Nassau County (the "Nassau County Family Court") seeking custody of Casey. *Arena v. Arena*, 96–1459 (N.Y.Fam.Ct. Feb. 19, 1997). On February 19, 1997, the Honorable Kenneth S. Diamond of the Nassau County Family Court awarded L. Arena custody of Casey and permitted the plaintiff visitation rights upon terms agreeable to his wife. *Id.*

In or about July 1998, L. Arena filed a complaint against the plaintiff in the Supreme Court of the State of New York, Nassau County (the "Supreme Court") seeking a divorce. *Arena v. Arena*, 98–7502 (N.Y.Sup.Ct. July 29, 1998). On July 8, 1998, the Honorable Roy S. Mahon of the Supreme Court appointed Emanuele to serve as the law guardian to Casey in the divorce action. *Arena v. Arena*, 98–7502 (N.Y.Sup.Ct. July 8, 1998). After being appointed the law guardian, Emanuele learned that the divorce action involved allegations of substance abuse and domestic violence. Based upon this information,

Emanuele moved for independent forensic evaluations of the plaintiff, L. Arena and Casey. Justice Mahon granted Emanuele's motion and directed that the parties undergo these evaluations. *Arena v. Arena*, 98–7502 (N.Y.Sup.Ct. Sept. 24, 1998).

On November 25, 1998, Justice Mahon allowed the plaintiff and L. Arena supervised visitation which consisted of meeting with Casey once a week for a four hour period at a designated location. *Arena v. Arena*, 98–7502 (N.Y.Sup.Ct. Nov. 25, 1998). As part of the supervised visitation, the plaintiff and L. Arena underwent random drug testing. On December 16, 1998, Judge Mahon changed the location where the plaintiff was allowed to visit Casey. *Arena v. Arena*, 98–7502 (N.Y.Sup.Ct. Dec. 16, 1998).

On January 26, 1999, DiFilippis, an assistant director with the Child Protective Services for the Department of Social Services, filed separate child neglect petitions against L. Arena and the plaintiff in the Nassau County Family Court. *In the Matter of Casey Arena*, 99–55 (N.Y.Fam. Ct. Jan. 26, 1999). Judge Lawrence was assigned to the neglect petitions. Each petition alleged that the plaintiff and L. Arena provided Casey with inadequate supervision as a result of their drug and alcohol use. The plaintiff alleges that De-Filippis made false statements in the petitions.

On June 1, 1999, the plaintiff and L. Arena executed a stipulation in Supreme Court to transfer the issue of custody involving Casey to the Nassau County Family Court before Judge Lawrence. *Arena v. Arena*, 98–7502 (N.Y.Fam.Ct. Jun. 1, 1999). On September 21, 1999, Judge Lawrence found that Casey was a neglected child. *In the Matter of Casey Arena*, 99–51 (N.Y.Fam.Ct. Sept. 21, 1999). Judge Lawrence then gave L. Arena custody of Casey on the condition that she live

with her grandmother, Anna Van Atta and continue in her present outpatient substance abuse program. Also, Judge Lawrence denied visitation to the plaintiff.

On October 22, 1999, the plaintiff agreed to an adjournment in contemplation of dismissal ("ACD") in full satisfaction of the neglect petition filed against him. *In the Matter of Casey Arena*, 99–55 (N.Y.Fam. Ct. Oct. 22, 1999). As part of the ACD, the plaintiff consented to L. Arena having custody of Casey without prejudice to his rights upon his release from a one year term of incarceration for a felony Driving while Under the Influence of Alcohol conviction. The plaintiff alleges that his counsel Sperber, Judge Lawrence, Emanuele and DeFilippis "forced and coerced" him to accept the ACD. On December 28, 1999, on consent of all parties, Judge Lawrence awarded custody to L. Arena and gave the plaintiff no visitation with Casey until otherwise ordered. *Van Att a/k/a Arena v. Arena*, 99–1856 (N.Y.Fam.Ct. Dec. 28, 1999).

The plaintiff alleges that on or about August 2, 2000, Currie, a case worker with the Child Protective Services for the Department of Social Services, filed an emergency petition with the Nassau County Family Court alleging that L. Arena was endangering the welfare of Casey. At that time, Currie purportedly appeared in Nassau County Family Court and requested that temporary custody of Casey be given to the plaintiff's mother, Sarah Arena ("S.Arena"). The plaintiff alleges that Currie knew that he was living with his mother and that an order of protection prohibiting him from visiting Casey was in effect. Sometime thereafter, the plaintiff alleges that the Nassau County Family Court gave S. Arena temporary custody of Casey.

The plaintiff further alleges that on September 1, 2000, he filed a petition in the Nassau County Family Court seeking custody of Casey. On September 11, 2000, Judge Lawrence purportedly failed to consider the merits of the plaintiff's petition for custody and found the plaintiff in contempt for wilfully violating the order of protection which prohibited him from visiting his son. The plaintiff claims that he was held in contempt without Judge Lawrence giving him prior notification. As a result of the finding of contempt, Judge Lawrence sentenced the plaintiff to five days in jail.

On or about October 20, 2000, Wheeler, an assistant director with the Child Protective Services for the Department of Social Services, moved in Nassau County Family Court to hold the plaintiff in violation of the ACD on the ground that he failed to enroll in a substance abuse program as required by the terms and conditions of the ACD. *In the Matter of Casey Arena*, 99–55 (N.Y.Fam.Ct. Oct. 20, 2000). The plaintiff alleges that the application was untimely and that Judge Lawrence, Wheeler, Currie and Emanuele "conspired" to illegally restore the neglect proceeding to deprive the plaintiff of his right to visitation with his son. On February 22, 2001, Judge Lawrence awarded custody of Casey to Michele Martin, the plaintiff's sister, upon the consent of L. Arena and the plaintiff. *Martin v. Arena*, 00–2300–011 (N.Y.Fam.Ct. Feb. 22, 2001). On May 3, 2001, Judge Lawrence allowed the plaintiff supervised visitation with Casey upon the condition that he refrain from taking any alcohol or illegal substance within 72 hours before any scheduled visit. *Martin v. Arena*, 00–2300–01 (N.Y.Fam. Ct. May 3, 2001).

On August 2, 2001, Judge Lawrence extended the ACD for one year as a result of the plaintiff's failure to enroll in a substance abuse program as required its terms and conditions. *In the Matter of Casey Arena*, 99–55 (N.Y.Fam.Ct. Aug. 2,

2001). As part of the extension of the ACD, the plaintiff consented to a final order of protection in which he was directed to stay away from Casey except for supervised visitation at the office of Dr. Robert Kasoff. *In the Matter of Casey Arena*, 99–55 (N.Y.Fam.Ct. Aug. 13, 2001). Also, the plaintiff was to refrain from taking any alcohol or illegal substance within 72 hours before any scheduled visit with Casey.

On October 1, 2001, the plaintiff filed the instant complaint against the Department of Social Services, the Child Protective Services, DeFilippis, Wheeler, Currie, Judge Lawrence, Emanuele and Sperber. Counts one and three, brought pursuant to 42 U.S.C. § 1983, allege that the defendants: (1) violated his right to procedural due process by depriving him of visitation with his child on the basis of his gender; and (2) violated his right to equal protection by imposing conditions on his visitation with his son that were not included in visitation orders issued to similarly situated parents. Count two, also brought pursuant to 42 U.S.C. § 1983, alleges that the defendants violated his right to substantive due process on the grounds that the Nassau County Family Court made three improper rulings: (1) entering an ACD against him for abuse and neglect of his son; (2) holding him in contempt for violating an order of protection prohibiting visitation with his son; and (3) extending the ACD after it had purportedly expired. Count four seeks monetary damages against Currie and Judge Lawrence for malicious prosecution and false imprisonment arising out of Judge Lawrence finding him in contempt and sentencing him to five days in jail.

As to the claimed relief, the plaintiff seeks: (1) a declaratory judgment stating that the defendants violated his constitutional rights under counts one, two and three; (2) a permanent injunction barring the defendants from violating his constitutional rights under counts one, two and three; (3) compensatory damages in the sum of $2,000,000 under count four and (4) attorneys' fees pursuant to 42 U.S.C. § 1988. Presently before the Court are two motions to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, by Judge Lawrence and Emanuele. Alternatively, Judge Lawrence and Emanuele move to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted under Rule 12(b)(6).

## II. DISCUSSION

### A. The Standards

#### 1. Rule 12(b)(1)

When considering a motion for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n. 6 (2d Cir.2001); *Antares Aircraft, L.P. v. Fed. Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130 (2d Cir.1976). Under Rule 12(b)(1), the Court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992). Hearsay statements contained in affidavits may not be considered. *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986).

## 2. Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a district court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Desiderio v. National Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir.1999). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995)). "In addition to the forgoing standard governing Rule 12(b)(6) motions, the Court must be mindful of the relevant rules of pleading. In general, a plaintiff need only provide 'a short and plain statement of the claim showing that the pleader is entitled to relief', Fed. R.Civ.P. 8(a)(2), and 'all pleadings shall be construed as to do substantial justice'. Fed.R.Civ.P. 8(f)." *Protter v. Nathan's Famous Sys., Inc.,* 904 F.Supp. 101, 105 (E.D.N.Y.1995).

## 3. *Pro Se* Litigant

In addressing the present motions, the Court is mindful that the plaintiff is proceeding *pro se* and that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers....' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)); *see also Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.

1993). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of her or his lack of legal training. *See Traguth v. Zuck,* 710 F.2d 90, 94 (2d Cir. 1983). Indeed, district courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law....' " *Traguth,* 710 F.2d at 95 (citation omitted).

The Court will address the issue of its subject matter jurisdiction first because a dismissal for lack of jurisdiction renders all other claims moot. *See Ruhrgas A.G. v. Marathon Oil Co.,* 526 U.S. 574, 584, 119 S.Ct. 1563, 1570, 143 L.Ed.2d 760 (1999) (stating that subject matter jurisdiction and personal jurisdiction go to the power of the court to adjudicate the merits of a case). Indeed, district courts must police subject matter jurisdiction on their own initiative. Fed.R.Civ.P. 12(h)(3); *Lyndonville Savings Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700 (2d Cir.2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.*").

## B. The Rooker–Feldman Doctrine

Under the *Rooker–Feldman* doctrine, a district court lacks "subject matter jurisdiction over claims that effectively challenge state court judgments." *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir. 2002). "The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by

Congress." *Id.* (citations omitted). "This comity principle seeks to prevent 'state and federal courts ... [from] fight[ing] each other for control of a particular case.'" *Id.* (citations omitted).

"In addition to claims that were actually litigated in state court, the *Rooker–Feldman* doctrine bars lower federal courts from exercising jurisdiction over claims that are 'inextricably intertwined' with state court determinations." *Id.* (citation omitted). A claim is inextricably intertwined when " 'at a minimum, ... a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), ... [and] the claim ... would be barred under the principles of preclusion.'" *Id.* (citing *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir. 1996)). On the other hand, " 'where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not "inextricably intertwined" and therefore not barred by *Rooker–Feldman*.'" *Id.* (citing *Moccio*, 95 F.3d at 199).

█ The Second Circuit has recently stated that the *Rooker–Feldman* doctrine bars a district court from reviewing a family court's determinations regarding custody, neglect and visitation where those issues have been decided after providing the plaintiff a full and fair opportunity to litigate those issues. *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir.2002). Counts one and three in the complaint arise out of the family court's determinations of the plaintiff's right to visitation with his son. Before the determinations concerning his right to visitation were made, the plaintiff participated in the family court proceedings and was represented by counsel. As such, the plaintiff had a full and fair opportunity to litigate those

issues. Accordingly, the *Rooker–Feldman* doctrine bars counts one and three.

█ In count two, the plaintiff claims that three rulings made by the Nassau County Family Court constituted a substantive due process violation. As stated above, the plaintiff may not raise the precise claims in federal court that he raised in state court. *See Phifer*, 289 F.3d at 56–57 ("We have held that '[i]f the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, *Rooker Feldman* plainly will bar the action.'") (citing *Moccio*, 95 F.3d at 198–99). Also, the plaintiff was present and represented by counsel when each of the three rulings were made. As such, the plaintiff had a full and fair opportunity to litigate those issues. Accordingly, the *Rooker Feldman* doctrine also bars count two.

█ In count four of the complaint, the plaintiff alleges that Currie and Judge Lawrence contributed to his malicious prosecution and false imprisonment which resulted in a finding of contempt and a five day jail sentence. The record does not reveal that the plaintiff's claims for malicious prosecution and false imprisonment were actually and necessarily decided by the state court. As such, at this juncture, the *Rooker–Feldman* doctrine does not bar count four.

Assuming that there is jurisdiction over all of the counts, the Court now addresses the remaining grounds to dismiss the complaint.

### C. As to the Motion to Dismiss the Complaint under Rule 12(b)(6)

#### 1. Absolute Judicial Immunity

█ It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*,

502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Butz v. Economou*, 438 U.S. 478, 511–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Maestri v. Jutkofsky*, 860 F.2d 50, 52–53 (2d Cir.1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989); *Vasile v. Dean Witter Reynolds Inc.*, 20 F.Supp.2d 465 (E.D.N.Y.1998). Judicial immunity is necessary because "principled and fearless decision-making" will be compromised if a judge "fear[s] that unsatisfied litigants may hound him with litigation charging malice or corruption." *Vasile v. Dean Witter Reynolds Inc.*, 20 F.Supp.2d at 489 (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

Absolute judicial immunity applies to all judges and other persons engaged in a judicial function, which is defined as the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Burns v. Reed*, 500 U.S. 478, 498–502, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The doctrine affords absolute immunity from damage suits for their judicial acts, unless such acts are done in the clear absence of all jurisdiction. The Supreme Court has emphasized that jurisdiction over the subject matter is the key element conferring immunity in a particular circumstance, and the inquiry is whether a defendant Judge had jurisdiction over the subject matter before him when he took the challenged action.

The Supreme Court has emphasized that the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (quoting *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 351, 20 L.Ed. 646 (1871)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authori-ty; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* An additional limitation is that a judge is immune only for actions performed in his judicial capacity. *Id.* at 360–63, 98 S.Ct. 1099, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331; *see also Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir.1988). Thus, because the rule of absolute judicial immunity is designed to protect the integrity of the judicial process, by allowing judges to "be at liberty to exercise their functions with independence and without fear of consequences," *Pierson v. Ray*, 386 U.S. at 554, 87 S.Ct. 1213, 18 L.Ed.2d 288, the rule applies even where the judge is accused of acting maliciously or corruptly, *id.*, however erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff, and "despite any 'informality with which [the judge] proceeded,' and . . . any *ex parte* feature of the proceeding." *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (quoting *Stump v. Sparkman*, 435 U.S. at 363 and n. 12, 98 S.Ct. 1099).

The Supreme Court has developed a "functional" approach in deciding whether an act is judicial for purposes of immunity. *Cleavinger*, 474 U.S. at 201–02, 106 S.Ct. 496. The issue of "immunity analysis rests on functional categories, not on the status of the defendant. Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." *Id.* (citations omitted). In deciding whether absolute judicial immunity applies a court should consider the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity. *Stump v. Sparkman*, 435 U.S. at 362, 98 S.Ct. 1099. Other relevant factors include: (i) the adversary

nature of the process, (ii) the correctability of error on appeal, (iii) the importance of precedent, and (iv) the presence of safeguards that reduce the need for private damage actions as a means of controlling unconstitutional conduct. *Cleavinger,* 474 U.S. at 202, 106 S.Ct. 496.

In this case, all of the plaintiff's claims against Judge Lawrence stem from his judicial decisions made while he presided over proceedings in the Nassau County Family Court solely from actions as a judge. There is no evidence proffered, nor plausible claim suggested that Judge Lawrence was without jurisdiction to decide the matters at issue before him or that he acted outside his judicial capacity. *See Vasile v. Dean Witter Reynolds Inc.,* 20 F.Supp.2d at 489. As such, Judge Lawrence is entitled to absolute judicial immunity from the claims seeking monetary damages. *See Springs v. Clement,* 202 F.R.D. 387, 393 (E.D.N.Y.2001) (dismissing Section 1983 claims against a justice in the family court on the ground of absolute judicial immunity because the claims stem from judicial decisions made during the family court proceedings). Accordingly, the motion to dismiss count four which seeks monetary damages against Judge Lawrence is granted.

■ Also, Judge Lawrence enjoys absolute judicial immunity on counts one, two and three which seek injunctive relief. In October of 1996, Congress amended Section 1983 to bar injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 309(c), 110 Stat. 3847, 3853; *see also Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999); *Hili v. Sciarrotta,* 140 F.3d 210, 215 (2d Cir.1998). Because the plaintiff does not allege, and

the record does not suggest, that a declaratory decree was violated or that declaratory relief was unavailable, the claims for injunctive relief against Judge Lawrence must also be dismissed. Accordingly, the motion to dismiss the complaint against Judge Richard S. Lawrence is granted in its entirety.

### 2. The Abstention Doctrine

■ To the extent that the plaintiff seeks declaratory and injunctive relief, those claims must be dismissed under the abstention doctrine enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Under the *Younger* doctrine, abstention is appropriate where: (1) a state proceeding is pending; (2) an important state interest is implicated; and (3) the plaintiff has an open avenue for review of constitutional claims in the state proceeding. *See Hansel v. Town Court for the Town of Springfield,* 56 F.3d 391, 393 (2d Cir.1995). Here, all three elements are satisfied.

First, the plaintiff's claims stem from the pending state court proceedings involving the custody of and visitation with his son. Second, these proceedings involve family relations and the custody of children which are important state interests. *See Phifer v. City of New York,* No. 99–4422, 1999 WL 722013, at *2 (S.D.N.Y. Sept.16, 1999). Third, the family court and the avenues for appeal from such decisions provide the plaintiff with an open avenue for review of his constitutional claims in the state proceeding. *Id. See also Murray v. Admin. for Children's Servs.,* No. 98–7356, 1999 WL 33869 (S.D.N.Y. Jan.25, 1999) (dismissing claims for injunctive and declaratory relief in suit against ACS arising from removal of child from custody of parent); *Martinez v. Scoppetta,* No. 96–7580, 1997 WL 316714 (S.D.N.Y. June 10, 1997) (same). As such,

the elements of the *Younger* doctrine are met.

However, the *Younger* doctrine does not apply if: (1) the state proceedings were brought in bad faith to harass the federal plaintiff; or (2) extraordinary circumstances compel the federal court to take jurisdiction. *Phifer*, 1999 WL 722013, at *2. The plaintiff has not demonstrated that either of these narrow exceptions should be invoked in this case. Also, abstaining pursuant to the *Younger* doctrine conserves judicial resources and avoids the possibility of inconsistent outcomes. *See Broadway 41st Street Realty Corp. v. New York State Urban Development Corp.*, 733 F.Supp. 735, 739 (S.D.N.Y.1990) ("[A]bstention can avoid the waste and confusion of duplicative judicial proceedings, with the concomitant potential for inconsistent or counterproductive results."). Since the necessary elements are satisfied, and considering the practical benefits, the Court declines to entertain jurisdiction over counts one, two and three which seek declaratory and injunctive relief.

### 3. Is Emanuele a State Actor?

■ Emanuele argues that he cannot be held liable under Section 1983 because as a law guardian he was not a state actor. Section 1983 provides in pertinent part:

> Every person who, under color of . . . [state law] subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or a] suit [in] equity. . . .

42 U.S.C. § 1983. A violation is proven when "a person or persons acting under color of state law deprived a plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *McDarby v. Dinkins*, 907 F.2d 1334, 1336 (2d Cir.1990) (citation omitted). Thus, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his rights or privileges secured by the Constitution or federal laws. *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998).

The plaintiff is unable to establish the first element because Emanuele as the law guardian, was not a state actor. *Elmasri v. England*, 111 F.Supp.2d 212, 221 (E.D.N.Y.2000) ("[G]uardians ad litem, although appointed by the court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for purposes of Section 1983."); *Storck v. Suffolk County Dept. of Social Services*, 62 F.Supp.2d 927 (E.D.N.Y.1999) ("[I]t has been held that guardians ad litem, although appointed by the court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for purposes of Section 1983."); *Levine v. County of Westchester*, 828 F.Supp. 238, 244 (S.D.N.Y.1993) (same). Accordingly, all of the Section 1983 claims against Emanuele must be dismissed.

### 4. The Section 1983 Conspiracy Claim

■ Having decided that Emanuele as the law guardian is not a state actor, the Court now turns to whether the plaintiff has alleged sufficient facts to impose liability on Emanuele for acting in concert with state actors. In order for a private person to be acting "under color of state law", he must be a wilful participant in join activity with state agents. *Fries v. Barnes*, 618 F.2d 988, 991 (2d Cir.1980); *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). In order to survive a motion to dismiss, a Section 1983 con-

spiracy allegation must not be vague and conclusory. *Storck,* 62 F.Supp.2d at 942.

In this case, the Court finds that the allegations against Emanuele fall far short of what is required to state a claim for the following reasons. The plaintiff's factual allegations against Emanuele are that: (1) Emanuele, Sperber, Judge Lawrence and DeFilippis "forced and coerced" the plaintiff to accept an ACD to resolve the neglect petition filed against him; and (2) Emanuele, Judge Lawrence, Wheeler and Currie "conspired" to illegally restore the neglect proceeding to deprive the plaintiff of his right to visitation with his son. These allegations are vague and conclusory; they provide insufficient facts to support a conspiracy theory. Also, Emanuele had no authority to force the plaintiff into accepting an ACD to resolve the neglect petition. Further, there are no facts that indicate what, if anything, Emanuele did to restore the neglect proceedings. As such, the claims against Emanuele based upon a "conspiracy" theory are dismissed.

## D. Leave to Amend

Rule 15 (a) of the Federal Rules of Civil Procedure provides in pertinent part that leave to amend a party's pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility...." *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 283 (2d Cir.2000). "This relaxed standard applies with particular force to *pro se* litigants." *Pangburn v. Culbertson,* 200 F.3d 65, 70 (2d Cir.1999). "[W]hen addressing a *pro se* complaint, a district 'court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Thompson v. Carter,* No. 00–0253, 2002 WL 427750, at *3 (2d Cir. Mar.19, 2002) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). " 'Futility' is a valid reason for denying a motion to amend ... only where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims." *Pangburn,* 200 F.3d at 70–71 (citation omitted).

It should be noted that the plaintiff does not seek leave to file an amended complaint. However, because of his *pro se* status, the Court assumes that leave would be sought. Nevertheless, the Court declines to grant leave to amend in this case. First, the plaintiff may not file an amended complaint against Judge Lawrence because he is absolutely immune from suit. As such, it is beyond doubt that the plaintiff can prove no set of facts in support of his claims against Judge Lawrence and thus, any amendment would be futile. Second, the plaintiff may not file an amended complaint against Emanuele because all of the claims against him are barred by either the *Rooker–Feldman* or the *Younger* doctrines. Also, Emanuele as the law guardian is not a state actor for purposes of Section 1983. As such, any amendment as to Emanuele would be futile. Third, the plaintiff may not file an amended complaint against the Department of Social Services, DeFilippis, Wheeler and Sperber because all of the claims against these defendants are barred by the *Rooker–Feldman* and the *Younger* doctrines. *See Lyndonville Savings Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700 (2d Cir.2000) (stating that a court may dismiss for lack of subject matter jurisdiction *sua sponte* ). As such, any amendment as to these defendants would also be futile.

## III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that counts one, two and three against all of the defendants are

dismissed for lack of subject matter jurisdiction pursuant to the *Rooker Feldman* doctrine; and it is further

**ORDERED**, that the motion to dismiss the complaint in its entirety against the defendant Judge Richard S. Lawrence on the ground of absolute judicial immunity is **GRANTED**; and it is further

**ORDERED**, that counts one, two and three against all of the defendants which seek declaratory and injunctive relief are dismissed pursuant to the *Younger* doctrine; and it is further

**ORDERED**, that the motion to dismiss the complaint against the defendant Emanuele on the grounds that he was not a state actor for purposes of Section 1983 and that the complaint fails to plead sufficient facts with respect to a Section 1983 conspiracy is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court is directed to close the case against the following defendants: The Department of Social Services, the Child Protective Services, DeFilippis, Wheeler, Judge Richard S. Lawrence, Emanuele and Sperber; and it is further

**ORDERED**, that the Clerk of the Court is directed to amend the caption of this case to read as follows:

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

GLEN ARENA, Plaintiff,

  -v.-

GENNA CURRIE, INDIVIDUALLY AND IN HER CAPACITY AS A CASE WORKER FOR NASSAU COUNTY CHILD PROTECTIVE SERVICES, Defendant.

and it is further

**ORDERED**, that the parties are directed to appear forthwith before United States Magistrate Judge Arlene R. Lindsay to complete discovery.

**SO ORDERED.**