Carl B. HILLEMANN,
Jr., Dr., Plaintiff,

v.

UNIVERSITY OF CENTRAL
FLORIDA, Defendant.

No. 6:02–CV–1225ORL28JGG.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 15, 2004.

Carl B. Hillemann, Jr., St. Charles, MO, pro se.

Paul S. Jones, Luks, Santaniello, Perez, Petrillo & Gold, Youndy C. Cook, University of Central Florida General Counsel's Office, Orlando, FL, for Defendant.

## ORDER

ANTOON, District Judge.

This cause is before the Court on Plaintiff's Motion for Summary Judgment (Doc.

55, filed May 6, 2004) and Defendant's Motion for Summary Judgment or, in the Alternative, For Partial Summary Judgment (Doc. 58, filed May 6, 2004). The United States Magistrate Judge has submitted a report recommending that Plaintiff's motion be denied and that Defendant's motion for summary judgment be granted and its alternative motion for partial summary judgment be denied as moot. (Doc. 120, filed July 20, 2004).

Pro se Plaintiff, Dr. Carl B. Hillemann, Jr., has filed an Objection to the Magistrate's Report and Recommendation (Doc. 126, filed August 11, 2004), setting forth a long list of grievances with the Magistrate Judge's statements concerning the facts and the record in this matter. Plaintiff also accuses counsel for Defendant, the Magistrate Judge, and this Court of ineptitude, having a bias against him, and outright lying. Defendant University of Central Florida has filed a Response to Plaintiff's Objection (Doc. 132, filed September 8, 2004), arguing that Plaintiff's objection fails to identify record evidence warranting rejection or modification of the Magistrate Judge's Report.

After an independent *de novo* review of the record in this matter, the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendation. Therefore, it is **ORDERED** as follows:

1. The Report and Recommendation filed July 20, 2004 (Doc. 120) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. Plaintiff's Motion for Summary Judgment (Doc. No. 55) is **DENIED**.

3. Defendant's Motion for Summary Judgment (Doc. 58) is **GRANTED**. Defendant's alternate Motion for Partial Summary Judgment (Doc. 58) is **DENIED as moot.**

4. All other pending motions are **DENIED as moot**.

5. The Clerk of Court is directed to enter a judgment for the Defendant providing that Plaintiff shall take nothing from Defendant in this action and, thereafter, to close the file.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause came on for hearing on June 24, 2004 on the following motions:

> **MOTION: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT (Docket No. 58)**

**FILED: May 6, 2004**

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** as to summary judgment and **DENIED AS MOOT** as to partial summary judgment.

> **MOTION: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 55)**

**FILED: May 6, 2004**

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I. *Background and Procedural History*

In March of 2001, the Plaintiff, Dr. Carl B. Hillemann, Jr. ["Hillemann"], applied for two positions [the "Small Business Positions"] with the Small Business Development Center at the University of Central Florida ["UCF"]. Docket No. 8 at 4—5. Around the same time, Hillemann applied for three positions [the "Marketing Positions"] in the Department of Marketing at

UCF. Docket No. 108 at 47. Hillemann also asserts that he applied for approximately 15 other teaching and directorial positions at UCF in early to mid–2001. Docket No. 8 at 4. Hillemann, who is white, was born on December 6, 1929, and was 71 years old when he applied for these various jobs. Docket No. 108 at 47.

On April 6, 2001, Hillemann attended two separate interviews at UCF—an official one for to the Small Business Positions, and a less formal one for the Marketing Positions. Docket No. 108 at 48–49. UCF never hired Hillemann. The two Small Business Positions were filled by Eunice Choi, a 42–year–old Asian woman, and Pauline Davis, a 43–year–old black woman. Docket No. 108 at 50. The three Marketing Positions were filled by Cynthia Gundy, a 29–year–old white woman; Nicole Howatt, a 28–year–old white woman; and Ronald Borrieci, a 46–year–old white male. Docket No. 108 at 49.

After receiving notice that he had not been selected for either of the Small Business Positions, Hillemann wrote a letter on April 26, 2001 to the Dean of the College of Business, Thomas Keon ("Keon"). In the letter, Hillemann accused UCF of not hiring him because of discrimination.[1] Docket No. 8 at ¶ 34. With regard to the Marketing Positions, it appears that UCF advised Hillemann no later than July 2001 that he had not been hired. Docket No. 108 at 49.

On October 30, 2001, Hillemann signed a Charge of Discrimination against UCF regarding its failure to hire him for the Marketing Positions. In that document, Hillemann asserted that UCF had failed to hire him because of his age in violation of the Age Discrimination in Employment Act [the "ADEA"]. Docket No. 58, Exhibit

A. According to that charge [the "Marketing Charge"], which was jointly filed, the discrimination took place on June 12, 2001. On August 9, 2002, Hillemann signed another Charge of Discrimination against UCF, this time regarding its failure to hire him for the Small Business Positions. Docket No. 8, Exhibit 3. The latter charge [the "Small Business Charge"] asserted that on April 15, 2001, UCF discriminated against Hillemann 1.) because of his race and his gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 2.) because of his age, in violation of the ADEA. Docket No. 8, Exhibit 3.

On October 18, 2002, Hillemann—representing himself *pro se*—filed an employment discrimination suit against UCF in this Court. On February 19, 2003, Hillemann filed an amended complaint (Docket No. 8), containing three counts. In Count One, Hillemann alleged that he had been discriminated against in violation of the ADEA. Docket No. 8 at 3. In Count Two, Hillemann alleged that he had been discriminated against because of his race and gender in violation of Title VII. Docket No. 8 at 6. And in Count Three, Hillemann alleged that UCF's failure to hire him resulted from unlawful retaliation in violation of Title VII. Docket No. 8 at 8. On June 20, 2003, the Honorable John Antoon II dismissed Count I of the Amended Complaint—the ADEA claim—on the ground that UCF had immunity from such a claim under the Eleventh Amendment. Docket No. 25.

## II. *Legal Standards*

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to in-

---

1. The letter is in the record, attached to matters unrelated to summary judgment. Docket No. 107 at 13—14. For purposes of this report, the undersigned assumes that the April 26 letter constitutes protected activity—i.e., a complaint about discrimination—for purposes of a retaliation claim.

terrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox,* 64 F.3d 590, 593—94 (11th Cir.1995); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits, and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant, and resolve all reasonable doubts in that party's favor. *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox,* 64 F.3d 590, 594 (11th Cir.1995), *quoting WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

**B. Pro Se Litigants**

The filings of a pro se litigant should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe,* 449 U.S. 5, 9,

101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of his lack of legal training. *Arena v. Dep't of Soc. Servs. of Nassau County*, 216 F.Supp.2d 146, 151 (E.D.N.Y.2002). Nevertheless, the Court is also aware that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Arena*, 216 F.Supp.2d at 151 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

### III. *Analysis*

In Count I of his Amended Complaint (Docket No. 8), Hillemann recounts his efforts to apply for the Marketing Positions and the Small Business Positions. Docket No. 8 at 3–5. Hillemann also describes approximately fifteen [2] other positions for which he claims to have applied at UCF. Docket No. 8 at 4. Hillemann contends that UCF's failure to hire him for all of these approximately twenty positions was motivated by discrimination based on his age in violation of the ADEA. In Count II, Hillemann asserts that UCF's failure to hire him for all of these positions was improperly motivated by discrimination based on his race (white) and/or his gender (male) in violation of Title VII. Docket No. 8 at 7. Finally, Hillemann contends in Count III that UCF's failure to hire him for all of the jobs other than the Small Business Positions [3] was done in retaliation

for his earlier complaints of discrimination, a violation of Title VII.

■ As noted above, Count I has already been dismissed. No ADEA age discrimination claims remain for adjudication via summary judgment. In addition, Hillemann has not shown (or even alleged) that he ever filed a charge with the EEOC (or received a right to sue letter) regarding the approximately fifteen "other" positions mentioned in the preceding paragraph. With regard to those fifteen positions, Hillemann's failure to exhaust his administrative remedies (analyzed in more detail below) precludes him from recovering from UCF for either discrimination or retaliation under Title VII.[4] Thus, only the following claims remain to be addressed on summary judgment: Hillemann's Title VII race and gender claims regarding the Small Business Positions and the Marketing Positions (Count II); and Hillemann's Title VII retaliation claim regarding the Marketing Positions (Count III).

### A. UCF's Motion for Summary Judgment

UCF makes five arguments as to why it is entitled to summary judgment. Each of these arguments will be addressed in turn.

#### 1. *Timeliness of Hillemann's EEOC Charge as to the Small Business Positions*

UCF does not dispute the timeliness of Hillemann's filing of the Marketing

---

**2.** The precise number is not relevant to the resolution of this dispute.

**3.** Hillemann contends that he first complained about discrimination after UCF failed to hire him for the Small Business Positions. Docket No. 8 at 9—10. As such, UCF's failure to hire him for the Small Business Positions could not have been retaliatory.

**4.** Even if Hillemann had exhausted his administrative remedies as to the fifteen "other"

positions, the record is devoid of evidence about those positions other than their titles. For example, the parties have pointed to no evidence as to the age, race or gender of the individuals hired for these other jobs. Without such evidence, Hillemann cannot establish a *prima facie* case of discrimination regarding those positions, and cannot avoid summary judgment.

Charge. However, the Small Business Charge shows a signature date of August 9, 2002—nearly 500 days after April 15, 2001, the date on which the discrimination allegedly occurred. Docket No. 8, Exhibit 3. UCF contends that the Small Business Charge was untimely filed, and that all of Hillemann's claims regarding the Small Business Positions therefore are barred. As discussed below, Hillemann responds that the August 9, 2002 charge was actually a "reactivation," of sorts, of a timely-filed charge that had been lost by the EEOC. Hillemann argues that the EEOC's mistake should not be held against him.

■ Before instituting a Title VII case in federal district court, a plaintiff must file a charge against the discriminating party with the EEOC. 42 U.S.C. § 2000e-(5)(e)(1). The EEOC charge must be filed within 180 days of the alleged discrimination, unless the plaintiff originally filed with a state or local agency with authority to seek relief from such practices, in which case the EEOC charge must be filed within 300 days of the alleged discrimination. *Id.* The filing of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court. Rather, it is a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

At the hearing on these motions for summary judgment, Hillemann (still repre-senting himself without benefit of counsel) produced a copy of a letter he received from the Tampa Area Office of the EEOC. That letter, dated August 27, 2001, explained that the office was in receipt of a "charge" against UCF, "dated 8/13/01."[5] Docket 103, Exhibit AAA. The letter informed Hillemann that Orlando and UCF fell geographically under the jurisdiction of the EEOC's Miami office, and that the Tampa EEOC office was therefore "forwarding your complaint to that office for processing." Docket 103 at Exhibit AAA.[6] Hillemann contends that the Miami EEOC office lost the forwarded document for almost a year, and that he had to goad them into generating a new charge for his signature in August 2002. Also at the summary judgment hearing, Hillemann produced a completed EEOC form titled "Charge Questionnaire," and signed by Hillemann on August 6, 2001. In that Charge Questionnaire, Hillemann asserts that UCF failed to hire him for the Small Business Positions because of his race, his color, his sex, and his age, and because of retaliation. Docket No. 103, Exhibit AAA.[7]

Hillemann filed the Charge Questionnaire within 180 days of the alleged discrimination. On several occasions, the United States Court of Appeals for the Eleventh Circuit has considered whether an intake questionnaire, such as the Charge Questionnaire, constitutes an EEOC charge. In *Bost v. Federal Express Corp.*, 372 F.3d 1233 (11th Cir.2004), the Court recently affirmed the dismissal

---

**5.** The charge Hillemann filed in regard to the Marketing Positions was dated October 30, 2001. Docket No. 58, Exhibit A.

**6.** At the hearing, counsel for UCF informed the Court he had never before seen this letter, which was accepted into evidence at that time. Hillemann has not pointed to any other instance where he provided the letter to UCF or made it a part of the record in this case.

**7.** It is not clear whether Hillemann contends that the Charge Questionnaire was forwarded to (and lost by) the Miami EEOC office, or whether he contends that the Charge Questionnaire was used as a basis to prepare a formal charge, which then disappeared in South Florida. The letter from the Tampa EEOC office refers to a "charge" dated August 13, while the Charge Questionnaire is dated August 6, suggesting that the latter possibility is more likely.

**1361**

of an ADEA claim by a plaintiff who had brought suit a month before filing his formal charge of discrimination with the EEOC. *Id.* at [1242]. Bost had argued that his intake questionnaire, filed several months prior to institution of the suit, constituted a formal charge and therefore satisfied the requirement that the charge precede the suit. *Id.* at [1239]. The Court held that, as a general rule, an intake questionnaire is not intended to operate as an EEOC charge, *Id.* at [1240], but that a *verified* intake questionnaire might do so "when the circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process." *Id.* (quoting *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir.2001)).

■ Hillemann's Charge Questionnaire was signed under penalty of perjury and contains allegations that show that he intended to activate the administrative process. Docket No. 103, Exhibit AAA; *see also Wilkerson*, 270 F.3d at 1317 (holding that signing intake questionnaire under penalty of perjury satisfies charge-verification requirement of Title VII and EEOC regulations). Furthermore, the Charge Questionnaire form contains pre-printed language assuring the complainant that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR § 1601.12(b) and 29 CFR § 1626.8(b), *consider it to be a sufficient charge of discrimination under the relevant statutes.*" Docket No. 103, Exhibit AAA (emphasis added). Thus, the language of Hillemann's document itself suggests that it should be considered a charge (rather than a mere questionnaire) for purposes of meeting the statute of limitations. Con-

struing the evidence in favor of the non-moving party, the undersigned concludes that UCF is not entitled to summary judgment on this point.

### 2. No EEOC Right–to–Sue Letter as to Small Business Positions

In paragraph 13 of his Amended Complaint, Hillemann contends that "EEOC case number 150A203356"—the case concerning the charge allegedly lost by the Miami EEOC—"is presently under EEOC investigation for Age, Race, and Gender/Sex Discrimination." Docket No. 8 at 5. The record contains no indication that the EEOC has issued a right-to-sue letter in regard to it, or that Hillemann has ever requested such a letter.

In *Pinkard v. Pullman–Standard*, 678 F.2d 1211 (5th Cir.1982)[8], the Court held that receipt of a right-to-sue letter is a condition precedent to a Title VII claim, subject to equitable modification, rather than a jurisdictional prerequisite: *See also Forehand v. Florida State Hosp. at Chattahoochee*, 89 F.3d 1562, 1570 (11th Cir. 1996) (holding that there is no *per se* rule that receipt of right-to-sue letter during pendency of suit satisfies requirement that plaintiff obtain statutory notice of the right to sue before filing a civil action under Title VII). Hillemann contends that the EEOC's loss of his Small Business Charge for a year justifies such equitable modification in this case, at least in regard to the claims associated with that charge.

In *Pinkard*, the plaintiffs brought a Title VII suit after filing their charges of discrimination with the EEOC, but before receiving notice of their right to sue. *Pinkard*, 678 F.2d at 1215. During the pendency of the case, the EEOC sent those plaintiffs right-to-sue letters. *Id.* at 1219.

8. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit accepted as binding precedent the post-

September 30, 1981 decisions of a Unit B panel of the former Fifth Circuit.

The District Court nevertheless dismissed those plaintiffs' Title VII claims, holding that the plaintiffs' failure to await those letters before filing suit precluded the court from acquiring subject matter jurisdiction. *Id.* at 1215. The Eleventh Circuit reversed, holding that receipt of the right-to-sue letter is merely a condition precedent that was satisfied by the plaintiffs' receipt of those letters before dismissal of their claims. *Id.* In dicta, however, the Court stated that "[w]e do not in any way approve of the filing of suit prior to the receipt of a right-to-sue letter. *As we have noted a prematurely filed suit is subject to dismissal upon proper motion at any time prior to the receipt of statutory notice of the right to sue.*" *Id.* at 1219 n. 6 (emphasis added).

More recently, in *Bost,* the Eleventh Circuit affirmed such a dismissal. *Bost v. Federal Express Corp.,* 372 F.3d at [1242]. Bost had timely filed his charge of discrimination, but filed suit prior to that filing and some months prior to his receipt of the right-to-sue notice. *Id.* Even though Bost did receive that notice while his case was still pending, the District Court dismissed his case as premature. In affirming the dismissal, the Eleventh Circuit explained:

> Bost should have waited the required 60 days after he filed his formal charge of discrimination to file his lawsuit. He also could have filed within 90 days of receiving his notice of a right to sue from the EEOC. Instead, Bost filed his lawsuit before either of these events and impermissibly bypassed the administrative process.

*Id.*

■ Here, unlike the situation in *Bost,* Hillemann's filing of the Small Business Charge preceded his suit. However, Hil-

lemann has not yet received a right-to-sue letter. As noted in *Forehand* above, even if Hillemann were to receive this letter during the pendency of this case, it would not necessarily cure his non-receipt prior to filing suit. Based on the court's reasoning in *Bost* and the dicta in *Pinkard,* Hillemann's failure to obtain a right-to-sue letter demonstrates that he has failed to fully exhaust his administrative remedies and satisfy the prerequisites to suit. Further, no grounds exist for equitably adjusting the requirement that Hillemann receive a right-to-sue letter. This Court cannot proceed to try a claim that the EEOC may still be investigating. The Small Business Claims are therefore subject to dismissal as premature.[9]

### 3. Stipulation for Dismissal of the Small Business Claims

On January 12, 2004, Hillemann signed a "Stipulation for Dismissal" regarding the Small Business Claims, which UCF's representative had previously signed. Docket No. 58, Exhibit E. Pursuant to Rule 41(a) of the Fed.R.Civ.P., the parties agreed "to the dismissal of all claims against Defendant, UCF raised in Plaintiff's Complaint relating to the two positions applied for in the Small Business Development Center, namely, Assistant Director position vacancy announcement number 42015 and Associate Director position vacancy announcement number 42017 as identified in paragraph 13 of Plaintiff's Complaint." Docket No. 58, Exhibit E. UCF contends that the stipulation bars Hillemann's continued pursuit of those claims.

Hillemann admits to "verbally agree[ing]" to withdraw the charges relating to the two Small Business Positions and to "signing the Defendant's stipula-

---

**9.** As noted above, at this point in the proceedings, the Small Business Claims survive only in Count II.

tion." Docket No. 108 at 53. However, he contends that the Stipulation for Dismissal should have no legal effect on his claims. Hillemann asserts that, after holding the document for "a number of days," he changed his decision and wrote words to that effect across the stipulation before returning it to UCF. Docket No. 108 at 53. The copy of the Stipulation for Dismissal introduced into the record by UCF, though signed by Hilleman, bears no additional notations indicating that Hilleman had changed his mind. Docket No. 58, Exhibit E.

■ Even if Hillemann's failure to obtain a right-to-sue letter did not prevent him from pursuing his claims regarding the Small Business Positions, the Stipulation for Dismissal would do so. Even assuming the truth of Hillemann's assertions on this point, the evidence is undisputed— and admitted by Hillemann himself—that he changed his mind only *after* agreeing to dismiss the Small Business Claims, both orally and in writing. Docket No. 108 at 53. The Court may consider a written stipulation of dismissal that is included in the record and subscribed by the party against whom it is asserted. Local Rule 4.15. After dismissing a claim, Hillemann may no longer pursue it.

4. *Limited Scope of the Marketing Charge*

■ Having determined that UCF is entitled to summary judgment as to Hillemann's claims regarding the Small Business Positions, the Court now turns to Hillemann's claims regarding the Marketing Positions. Within the Marketing Charge, Hillemann describes the three Marketing Positions for which applied on March 6, 2001. Docket No. 58, Exhibit A.

Hillemann claims to have learned on June 12, 2001, that he was not one of the three individuals chosen for the Marketing Positions, and he marks June 12, 2001 as the date on which the discrimination took place. He further notes:

When I inquired as to the reason for non-selection, I was not provided with a reason. All three applicants selected for open positions were younger than myself and did not meet the minimum qualifications.... I believe I have been discriminated against because of my age in violation of the Age Discrimination in Employment Act of 1967, as amended.

Docket No. 58, Exhibit A. Under the listing "Cause of Discrimination Based On (Check appropriate box(es))," Hillemann selected the box labeled "Age." The Marketing Charge contains no allegations that race, gender, or retaliation might have motivated UCF's decision not to hire him, and no box other than "Age" is selected as a cause of discrimination. Docket No. 58, Exhibit A.

When Hillemann filed his Amended Complaint, he repeated these age discrimination allegations in Count I, Docket No. 8 at 3—6, which was subsequently dismissed (Docket No. 25) due to UCF's sovereign immunity from suit under the ADEA. Hillemann also alleged that UCF's failure to hire him for the Marketing Positions resulted from gender and race discrimination in violation of Title VII, and constituted retaliation for engaging in conduct protected under Title VII. UCF now moves for summary judgment as to these claims on the grounds that Hillemann's failure to mention gender, race, retaliation or Title VII in the Marketing Charge bars his pursuit of such claims in this court. Docket No. 8 at Section C.[10]

10. Hillemann has also contended that in his initial questionnaire, which led to the EEOC's generation of the Marketing Charge for his signature, he also checked the "gender," "race" and "retaliation" boxes and that he has no idea why the Marketing Charge refers only to age discrimination. However, even if he did check those additional boxes in the

A plaintiff's Title VII complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir.2000). Courts are extremely reluctant to allow procedural technicalities to bar claims brought under Title VII; as such, the scope of an EEOC complaint should not be strictly interpreted. *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir.2004).

Nonetheless, this case involves far more than a mere procedural technicality. A review of the facts alleged in the Marketing Charge—all of which refer to age, and none of which refer to gender, race, retaliation or Title VII—demonstrates that this is not a case in which a complainant, unrepresented by counsel, simply checked the wrong box on the charge form. *See, e.g., Gregory*, 355 F.3d at 1280 (finding that plaintiff who had mentioned only race and gender discrimination in charge was not barred from pursuing retaliation claim by her failure to mark the retaliation space on the EEOC template form). In this case, as would reasonably be expected, only an EEOC age discrimination investigation grew out of the Marketing Charge. Docket No. 58, Exhibit B. In accord with cases such as *Gregory*, Hillemann might argue that an EEOC investigation of retaliation for Hillemann's complaints about age discrimination also might reasonably be expected to grow out of the Marketing Charge.

But nothing suggests that Hillemann's complaints about age discrimination ever led to an EEOC investigation into gender or race discrimination, or into retaliation against Hillemann for having complained about gender or race discrimination (as would be required for a Title VII retaliation claim).[11] Such investigations would not reasonably be expected to grow out of the Marketing Charge. As a matter of law, Hillemann may not pursue the remaining Marketing Position claims because they fall outside of the scope of the Marketing Charge: the Title VII race and gender claims raised regarding the Marketing Positions in Count II, and the retaliation claims raised regarding the Marketing Positions in Count III.

As previously stated, the Small Business Position claims are barred by the absence of a right-to-sue letter and the stipulation of dismissal. Of the claims that survived the dismissal of the ADEA count, no claims therefore remain.

### 5. Failure to Rebut UCF's Proffered Reasons for Not Hiring Hillemann

Hillemann lacks direct evidence of discrimination, such as an incriminating e-mail stating that UCF's decision not to hire him was improperly motivated by his age, race, gender, or earlier protected activity. This case therefore falls under the analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* first requires that Hillemann establish a prima facie case of discrimination. Once this occurs, UCF must respond by articulating a legitimate, non-discriminatory reason for failing to hire him. If UCF does so, Hillemann must produce evidence that would permit a reasonable fact finder to conclude that the reasons given by UCF

---

initial questionnaire, Hillemann has not provided—and this Court has not discovered—any support for the notion that the scope of the questionnaire (rather than the charge) governs the scope of the resulting judicial complaint.

11. The EEOC's decision not to investigate racial discrimination may have resulted from the fact that the three people hired for the Marketing Positions were all of Hillemann's race. Docket No. 58 at Section D, n. 1. One of those three hires was also male.

were not the real reasons the failure to hire him, i.e., a pretext. *See Chapman v. AI Transport,* 229 F.3d 1012 (11th Cir. 2000).

For purposes of this motion for summary judgment, the Court assumes that Hillemann has established a *prima facie* case of discrimination—a point not contested by UCF for the purposes of this motion—regarding the Marketing Positions.[12] UCF has successfully articulated a series of legitimate, non-discriminatory reasons for its failure to hire Hillemann for the Marketing Positions. The chairman of UCF's marketing department testified that, at the time Hillemann applied, the department had recently lost approximately 40 percent of its faculty. Docket No. 58 at ¶ 10. In response, the chairman began to seek faculty hires with a lower risk of relocating away from UCF—e.g., applicants who were Central Florida residents, who were familiar with the area, and who were familiar with UCF students and the companies that recruited them. *Id.* Hillemann, a Missouri resident, was not rated as highly in this area as some other applicants.

Other search committee members recounted other areas in which they determined that Hillemann compared poorly to other applicants or to the committee members' expectations. For example, after Hillemann's April 6, 2001 interview, one member found him to be boring and unenthusiastic about teaching. Docket No. 58 at ¶ 30. Another was troubled by, *inter alia,* varying typefaces and handwritten edits on the curriculum vitae that Hillemann submitted, believing that these indicated a lack of professionalism. Docket No. 58 at ¶ 39. In addition to pointing out the areas in which UCF believed that Hillemann fell short, UCF also detailed at some length the positive qualities of the individuals it did hire—their enthusiasm, their professionalism, their residence near (and greater familiarity with) UCF, its students, and the companies that recruit them. Docket No. 58, ¶¶ 44–70.

Although Hillemann responded vigorously to UCF's proffered justifications, he nevertheless failed to raise a genuine issue of material fact as to whether those justifications were merely pretextual. Throughout his response, Hillemann disputes UCF's factual assertions and the wisdom of the criteria used in filling the Marketing Positions, but provides no legal or factual support for concluding that UCF is wrong. For example, Hillemann attempts to refute UCF's asserted desire for low-risk hires as follows:

> Reference Defendant's point # 10, page 8. **A false statement** (that the Marketing Department had lost 40% of its faculty in 2001, March). **Note:** Four Instructors were hired from April 03, 2001 through July 08, 2001. The Math says .40 × 4/.40 = 10 Faculty? In April 2001? See Exhibit O. The Marketing Department Faculty Chart details 32 Faculty Members (various categories) as of December 14, 2003? # 10 is totally **irrelevant reason for UCF's failure to follow** Federal EEO/UCF Hiring guidelines and their published [position] minimum and preferences criteria. A Sham! All reasons given for failure to hire Plaintiff are not credible and reasons given for hiring others and failure to hire the most qualified applicant, is a clumsy attempt to cover up age and gender discrimination (Disparate Treatment against Plaintiff age 71 v 28, 28, 29 and 46).

12. In its motion for summary judgment, UCF addressed *McDonnell Douglas* only in regard to the Marketing Positions. As such, the Court does not undertake the *McDonnell Douglas* analysis as to Hillemann's claims regarding the Small Business Positions.

Docket No. 79 at 5 (emphasis in original). Hillemann's attack on the "low-risk hire" justification typifies his response to the entire motion for summary judgment.

Hillemann repeatedly asserts that he was by far the most qualified candidate for the Marketing Positions. He points to his qualifications as evidence that UCF *must* have discriminated against him when it hired allegedly less-qualified candidates. But even if one assumes that Hillemann was the best-qualified candidate for each position, it would not suggest that UCF violated the law by failing to hire him. Title VII and the ADEA forbid discrimination, not bad judgment. To survive summary judgment, Hillemann must show that UCF not only hired the wrong candidates, but that it did so for the wrong reasons. At best, his qualifications are only evidence of the former. Applying the *McDonnell Douglas* analysis, UCF is entitled to summary judgment as to the Marketing Positions. Having determined that UCF is entitled to a summary judgment in its favor on all claims, it necessarily follows that Hillemann's motion for summary judgment should be denied.

In consideration of the foregoing, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket No. 55) be **DENIED**, and that Defendant's Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment be **GRANTED** as to summary judgment and **DENIED AS MOOT** as to partial summary judgment.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.